BLACK, DIRECTOR, MISSOURI DEPARTMENT OF
CORRECTIONS AND HUMAN RESOURCES,
ET AL. *v.* ROMANO

No. 84–465.  Argued March 18, 1985—Decided May 20, 1985

O'CONNOR, J., delivered the opinion of the Court, in which all other Members joined, except POWELL, J., who took no part in the consideration or decision of the case. MARSHALL, J., filed a concurring opinion, in which BRENNAN, J., joined, *post*, p. 617.

*John Ashcroft*, former Attorney General of Missouri, argued the cause for petitioners. With him on the briefs were *William L. Webster*, Attorney General, and *John M. Morris III* and *David C. Mason*, Assistant Attorneys General.

*Jordan B. Cherrick* argued the cause and filed a brief for respondent.*

JUSTICE O'CONNOR delivered the opinion of the Court.

In this case we consider whether the Due Process Clause of the Fourteenth Amendment generally requires a sentencing court to indicate that it has considered alternatives to incarceration before revoking probation. After a hearing, a state judge found that respondent had violated his probation conditions by committing a felony shortly after his original prison sentences were suspended. The judge revoked probation and ordered respondent to begin serving the previously im-

---

*A brief for the State of Indiana et al. as *amici curiae* urging reversal was filed by *Linley E. Pearson*, Attorney General of Indiana, and *William E. Daily*, Deputy Attorney General, and by the Attorneys General for their respective States as follows: *Charles A. Graddick* of Alabama, *Norman Gorsuch* of Alaska, *Robert K. Corbin* of Arizona, *Duane Woodard* of Colorado, *Jim Smith* of Florida, *Neil Hartigan* of Illinois, *Robert T. Stephan* of Kansas, *William J. Guste, Jr.,* of Louisiana, *Edwin Lloyd Pittman* of Mississippi, *Michael T. Greely* of Montana, *Stephen E. Merrill* of New Hampshire, *Irwin I. Kimmelman* of New Jersey, *Lacy H. Thornburg* of North Carolina, *Brian McKay* of Nevada, *T. Travis Medlock* of South Carolina, *W. J. Michael Cody* of Tennessee, *Gerald L. Baliles* of Virginia, and *Archie G. McLintock* of Wyoming.

posed sentences. Nearly six years later, the District Court for the Eastern District of Missouri held that respondent had been denied due process because the record of the revocation hearing did not expressly indicate that the state judge had considered alternatives to imprisonment. The District Court granted a writ of habeas corpus and ordered respondent unconditionally released from custody. 567 F. Supp. 882 (1983). The Court of Appeals for the Eighth Circuit affirmed. 735 F. 2d 319 (1984). We granted certiorari, 469 U. S. 1033 (1984), and we now reverse.

## I

On November 15, 1976, respondent Nicholas Romano pleaded guilty in the Circuit Court of Laclede County, State of Missouri, to two counts of transferring and selling a controlled substance. The charges resulted from Romano's attempt to trade 26 pounds of marihuana, which he had harvested, refined, and packaged, for what he thought was opium. App. 15, 27–28, 40. After the Missouri Department of Probation and Parole completed a presentence investigation, the trial judge held a sentencing hearing on April 13, 1977. Romano's attorney urged the court to order probation. He argued that the offenses had not involved any victim, that Romano had no previous felony convictions, and that, except for running a stop sign, he had not violated the law after his arrest on the controlled substance charges. *Id.*, at 31–36. Both the Probation Department and the prosecutor opposed probation. *Id.*, at 33, 36–38. The trial judge nonetheless concluded that probation was appropriate because the underlying charges did not involve an offense against the person. *Id.*, at 43.

The judge imposed concurrent sentences of 20 years on each count, suspended execution of the sentences, and placed Romano on probation for 5 years. *Id.*, at 42–43, 47. The trial judge observed that Romano appeared to "have an uphill run on this probation," *id.*, at 43, given the presentence

report and the fact that his "past track record [was] not too good." *Ibid.* The trial judge warned that if any of the conditions of probation were violated, he would revoke probation and order Romano imprisoned under the terms of the suspended sentence. *Id.*, at 41, 44. Only two months after being placed on probation, Romano was arrested for leaving the scene of an automobile accident. In an information issued on July 15, 1977, he was charged with violating Mo. Rev. Stat. §§ 564.450, 564.460 (1959), replaced by Mo. Rev. Stat. §§ 577.010, 577.060 (1978), a felony punishable by up to five years' imprisonment. The information alleged that Romano had struck and seriously injured a pedestrian with his automobile and, knowing that such injury had occurred, "unlawfully and feloniously" left the scene without stopping or reporting the accident. 1 Record 50.

On July 18, 1977, the judge who had sentenced Romano on the controlled substance charges held a probation revocation hearing. Several witnesses gave testimony indicating that Romano had run over a pedestrian in front of a tavern and then had driven away. Romano offered no explanation of his involvement in the accident. Instead, his counsel challenged the credibility of the witnesses, argued that the evidence did not justify a finding that Romano had violated his probation conditions, and requested the court to continue the defendant's probation. App. 99–102. Neither Romano nor his two lawyers otherwise proposed or requested alternatives to incarceration. The judge found that Romano had violated his probation conditions by leaving the scene of an accident, revoked probation, and ordered execution of the previously imposed sentence. *Id.*, at 103. Although the judge prepared a memorandum of his findings, *id.*, at 107–110, he did not expressly indicate that he had considered alternatives to revoking probation. On October 12, 1977, the State filed an amended information reducing the charges arising from the automobile accident to the misdemeanor of reckless and care-

less driving. 1 Record 52. Romano was convicted on the reduced charges and ordered to pay a $100 fine. *Id.*, at 53.

Romano was incarcerated in state prison following the revocation of his probation. After unsuccessfully seeking postconviction relief in state court, he filed a petition for a writ of habeas corpus in Federal District Court. The habeas petition, filed in November 1982, alleged that the state judge had violated the requirements of due process by revoking respondent's probation without considering alternatives to incarceration. The District Court agreed, and held that under the circumstances "alternatives to incarceration should have been considered, on the record, and if [the trial judge] decided still to send Romano to jail, he should have given the reasons why the alternatives were inappropriate." 567 F. Supp., at 886. Because Romano had been imprisoned for more than five years and had been paroled after he filed his federal habeas petition, the District Court concluded that the proper relief was to order him released from the custody of the Missouri Department of Probation and Parole. *Id.*, at 887. The Court of Appeals agreed that due process required the trial judge to consider alternatives to incarceration in the probation revocation proceeding and to indicate on the record that he had done so. See 735 F. 2d, at 322, 323.

## II

The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. *Bearden* v. *Georgia*, 461 U. S. 660, 666, and n. 7 (1983). Both types of limits are implicated in this case. The opinions of the District Court and the Court of Appeals not only require consideration of alternatives to incarceration before probation is revoked, which is properly characterized as a substantive limitation, but also impose a procedural requirement that the sentencing court explain its reasons for rejecting such alternatives. These requirements, the courts below held, follow

from *Morrissey* v. *Brewer*, 408 U. S. 471 (1972), and *Gagnon* v. *Scarpelli*, 411 U. S. 778 (1973). We disagree. Nothing in these decisions requires a sentencing court to state explicitly why it has rejected alternatives to incarceration. Moreover, although *Morrissey* and *Gagnon* outline the minimum procedural safeguards required by due process, neither decision purports to restrict the substantive grounds for revoking probation or parole. *Bearden* v. *Georgia* recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution. We have no occasion in the present case, however, to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context.

## A

In identifying the procedural requirements of due process, we have observed that the decision to revoke probation typically involves two distinct components: (1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation. See *Gagnon, supra,* at 784; cf. *Morrissey, supra,* at 479–480 (parole revocation). Probationers have an obvious interest in retaining their conditional liberty, and the State also has an interest in assuring that revocation proceedings are based on accurate findings of fact and, where appropriate, the informed exercise of discretion. *Gagnon, supra,* at 785. Our previous cases have sought to accommodate these interests while avoiding the imposition of rigid requirements that would threaten the informal nature of probation revocation proceedings or interfere with exercise of discretion by the sentencing authority.

*Gagnon* concluded that the procedures outlined in *Morrissey* for parole revocation should also apply to probation proceedings. 411 U. S., at 782. Thus the final revocation of probation must be preceded by a hearing, although the fact-

finding body need not be composed of judges or lawyers. The probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation. *Id.*, at 786. The probationer is also entitled to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation. Finally, the probationer has a right to the assistance of counsel in some circumstances. *Id.*, at 790. One point relevant to the present case is immediately evident from a review of the minimum procedures set forth in some detail in *Gagnon* and *Morrissey:* the specified procedures do not include an express statement by the factfinder that alternatives to incarceration were considered and rejected.

Neither *Gagnon* nor *Morrissey* considered a revocation proceeding in which the factfinder was required by law to order incarceration upon finding that the defendant had violated a condition of probation or parole. Instead, those cases involved administrative proceedings in which revocation was at the discretion of the relevant decisionmaker. See *Morrissey*, 408 U. S., at 475; *id.*, at 492–493 (Douglas, J., dissenting in part); Wis. Stat. Ann. § 57.03 (1957) (statute involved in *Gagnon*). Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue probation or parole. Where such discretion exists, however, the parolee or probationer is entitled to an opportunity to show not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition. *Gagnon, supra,* at 789; *Morrissey, supra,* at 488. This Court has not held that a defendant who is afforded these opportunities is

also entitled to an explicit statement by the factfinder explaining why alternatives to incarceration were not selected.

We do not question the desirability of considering possible alternatives to imprisonment before probation is revoked. See, *e. g.*, ABA Standards for Criminal Justice 18–7.3, and Commentary (2d ed. 1980); National Advisory Commission on Criminal Justice Standards and Goals, Corrections, Standard 5.4, p. 158 (1973). Nonetheless, incarceration for violation of a probation condition is not constitutionally limited to circumstances where that sanction represents the only means of promoting the State's interest in punishment and deterrence. The decision to revoke probation is generally predictive and subjective in nature, *Gagnon*, 411 U. S., at 787, and the fairness guaranteed by due process does not require a reviewing court to second-guess the factfinder's discretionary decision as to the appropriate sanction. Accordingly, our precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial. *Id.*, at 787–790; *Morrissey, supra*, at 489–490. We believe that a general requirement that the factfinder elaborate upon the reasons for a course not taken would unduly burden the revocation proceeding without significantly advancing the interests of the probationer. Cf. *Greenholtz* v. *Nebraska Penal Inmates*, 442 U. S. 1, 13–16 (1979) (discussing procedures where parole release decision implicated liberty interest).

The procedures already afforded by *Gagnon* and *Morrissey* protect the defendant against revocation of probation in a constitutionally unfair manner. As we observed in another context in *Harris* v. *Rivera*, 454 U. S. 339, 344–345, n. 11 (1981) *(per curiam)*, "when other procedural safeguards have minimized the risk of unfairness, there is a diminished justification for requiring a judge to explain his rulings." The written statement required by *Gagnon* and *Morrissey* helps to insure accurate factfinding with respect to any alleged

violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence. Cf. *Douglas* v. *Buder*, 412 U. S. 430 (1973) *(per curiam)* (revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated). Moreover, where the factfinder has discretion to continue probation, the procedures required by *Gagnon* and *Morrissey* assure the probationer an opportunity to present mitigating evidence and to argue that alternatives to imprisonment are appropriate. That opportunity, combined with the requirement that the factfinder state the reason for its decision and the evidence relied upon, accommodates the interests involved in a manner that satisfies procedural due process.

## B

The Court's decision in *Bearden* v. *Georgia* recognized that in certain circumstances, fundamental fairness requires consideration of alternatives to incarceration prior to the revocation of probation. Where a fine or restitution is imposed as a condition of probation, and "the probationer has made all reasonable efforts to pay . . . yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." 461 U. S., at 668–669 (footnote omitted). This conclusion did not rest on the view that *Gagnon* and *Morrissey* generally compel consideration of alternatives to incarceration in probation revocation proceedings. Indeed, by indicating that such consideration is required only if the defendant has violated a condition of probation through no fault of his own, *Bearden* suggests the absence of a more general requirement. See 461 U. S., at 672. *Bearden* acknowledged this Court's sensitivity to the treatment of indigents in our criminal justice system and, after considering the penological interests of the

State, concluded that "depriv[ing] the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine" would be "contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.*, at 673 (footnote omitted).

We need not decide today whether concerns for fundamental fairness would preclude the automatic revocation of probation in circumstances other than those involved in *Bearden.* The state judge was not required by Missouri law to order incarceration upon finding that Romano had violated a condition of his probation. The statute in effect at the time declared that the court "may in its discretion" revoke probation and order the commencement of a previously imposed sentence in response to a violation of probation conditions. Mo. Rev. Stat. § 549.101.1 (Supp. 1965), repealed and replaced by Mo. Rev. Stat. § 559.036 (1978). But the statute also expressly provided that "[t]he court may in its discretion order the continuance of the probation . . . upon such conditions as the court may prescribe." Mo. Rev. Stat. § 549.101.1 (Supp. 1965). Under Missouri law, the determination to revoke probation was at the discretion of the trial judge, who was obligated to make independent findings and conclusions apart from any recommendation of the probation officer. *Moore* v. *Stamps,* 507 S. W. 2d 939, 948–949 (Mo. App. 1974) (en banc). We must presume that the state judge followed Missouri law and, without expressly so declaring, recognized his discretionary power to either revoke or continue probation. Cf. *Townsend* v. *Sain,* 372 U. S. 293, 314–315 (1963).

### III

The decision to revoke Romano's probation satisfied the requirements of due process. In conformance with *Gagnon* and *Morrissey,* the State afforded respondent a final revocation hearing. The courts below concluded, and we agree, that there was sufficient evidence to support the state court's

finding that Romano had violated the conditions of his probation. 735 F. 2d, at 321; 567 F. Supp., at 885. The memorandum prepared by the sentencing court and the transcript of the hearing provided the necessary written statement explaining the evidence relied upon and the reason for the decision to revoke probation. Romano does not dispute that he had a full opportunity to present mitigating factors to the sentencing judge and to propose alternatives to incarceration. The procedures required by the Due Process Clause of the Fourteenth Amendment were afforded in this case, even though the state judge did not explain on the record his consideration and rejection of alternatives to incarceration.

As a substantive ground for challenging the action of the state court, Romano argues that because the offense of leaving the scene of an accident was unrelated to his prior conviction for the controlled substance offenses, revocation of his probation was arbitrary and contrary to due process. This argument also lacks merit. The revocation of probation did not rest on a relatively innocuous violation of the terms and conditions of probation, but instead resulted from a finding that Romano had committed a felony involving injury to another person only two months after receiving his suspended sentence. The Fourteenth Amendment assuredly does not bar a State from revoking probation merely because the new offense is unrelated to the original offense. Nor is our conclusion in this regard affected by the fact that after the revocation proceeding, the charges arising from the automobile accident were reduced to reckless and careless driving.

Given our disposition of the merits, we need not address the propriety of the relief ordered by the District Court and affirmed by the Court of Appeals. The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE POWELL took no part in the consideration or decision of this case.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, concurring.

## I

I agree that revocation of probation need not be accompanied by an express demonstration on the record that alternatives to revocation were considered and found wanting before the decision to revoke was made.[1] Because I have argued on several occasions that written explanations for particular decisions are constitutionally required,[2] I write separately to explain my view as to why such explanations are not required in this setting.

The Court has not attempted any systematic explanation of when due process requires contemporaneous reasons to be given for final decisions, or for steps in the decisionmaking process, that affect protected liberty or property interests. The Court has stated that the occasions when due process requires an explanation of the reasons for a decision "are the exception rather than the rule." *Harris* v. *Rivera*, 454 U. S. 339, 344 (1981) *(per curiam)*. At the same time, we have recognized several occasions in which such reasons must be provided, such as when public welfare benefits are terminated,[3] parole[4] or probation[5] is revoked, good-time credits

---

[1] Respondent did not propose at the revocation hearing any specific alternatives to revocation and there is therefore no need to address a situation in which the probationer specifically proposes such alternatives. See *ante*, at 609.

[2] *Ponte* v. *Real, ante,* at 508–513 (MARSHALL, J., dissenting); *Greenholtz* v. *Nebraska Penal Inmates,* 442 U. S. 1, 40 (1979) (MARSHALL, J., dissenting); see also *Hewitt* v. *Helms,* 459 U. S. 460, 479 (1983) (STEVENS, J., dissenting in part); *Connecticut Bd. of Pardons* v. *Dumschat,* 452 U. S. 458, 468 (1981) (STEVENS, J., dissenting); cf. *Dorszynski* v. *United States,* 418 U. S. 424, 445 (1974) (MARSHALL, J., concurring in judgment) (statutory interpretation).

[3] *Goldberg* v. *Kelly,* 397 U. S. 254, 271 (1970).

[4] *Morrissey* v. *Brewer,* 408 U. S. 471, 489 (1972).

[5] *Gagnon* v. *Scarpelli,* 411 U. S. 778 (1973).

are taken away from prison inmates,[6] or inmates are transferred to mental institutions.[7] This requirement is not limited to explanations for substantive decisions on the merits, for record explanations must also be provided at stages of the hearing that are integral to assuring fair and accurate determinations on the merits. For example, counsel cannot be denied at parole or probation revocation hearings without a record explanation.[8] Similarly, the right of an inmate to present witnesses and to confront and cross-examine adverse witnesses at hearings involving transfers to mental institutions may be limited only when supported by record findings of good cause.[9]

In my view, the theme unifying these cases is that whether due process requires written reasons for a decision, or for a particular step in the decisionmaking process, is, like all due process questions, to be analyzed under the three-factor standard set forth in *Mathews* v. *Eldridge,* 424 U. S. 319 (1976). When written reasons would contribute significantly to the "fairness and reliability" of the process by which an individual is deprived of liberty or property, *id.,* at 343, reasons must be given in this form unless the balance between the individual interest affected and the burden to the government tilts against the individual. *Id.,* at 335.[10] Whether

---

[6] *Wolff* v. *McDonnell,* 418 U. S. 539, 563 (1974).

[7] *Vitek* v. *Jones,* 445 U. S. 480 (1980).

[8] *Gagnon, supra,* at 791.

[9] *Vitek, supra,* at 494–495 (requiring "a finding, not arbitrarily made, of good cause").

[10] When judicial review is one of the elements relied on to assure that the process as a whole is reliable, written reasons may be required to enable that review to fulfill its role effectively. Cf. *Wolff, supra,* at 565 ("[T]he provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly"); *Ponte* v. *Real, ante,* at 508–513, (MARSHALL, J., dissenting) (written explanation required when necessary, *inter alia,* to facilitate meaningful judicial review); *Hewitt, supra,* at 495 (STEVENS, J.,

written reasons would make such a contribution in any particular case depends on a variety of factors, including the nature of the decisionmaking tribunal,[11] the extent to which other procedural protections already assure adequately the fairness and accuracy of the proceedings,[12] and the nature of the question being decided.[13]

Applying these principles here, I believe a factfinder need not on the record run through the litany of alternatives available before choosing incarceration. Most important, *Gagnon* already requires a written statement of the evidence relied on and the reasons for concluding that revocation of probation is warranted.[14] That explanation will allow courts to determine whether revocation is substantively valid, or fundamentally unfair, even in the absence of record consideration of alternatives to revocation.[15]

In addition, probation revocation bodies, be they judges or boards, are familiar enough with the possibility of alternatives to incarceration that such a requirement is not necessary to call their attention to the standards governing exercise of

dissenting) ("A written statement of reasons would facilitate administrative and judicial review . . .").

[11] See, *e. g.*, *Hewitt, supra*, at 493 (STEVENS, J., dissenting); *Greenholtz, supra*, at 40 (MARSHALL, J., dissenting in part); *Connecticut Bd. of Pardons, supra*, at 472 (STEVENS, J., dissenting).

[12] See, *e. g.*, *Harris* v. *Rivera*, 454 U. S. 339, 344–345, n. 11 (1981) *(per curiam); Connecticut Bd. of Pardons, supra*, at 472 (STEVENS, J., dissenting).

[13] See, *e. g.*, *Dorszynski, supra*, at 457–459 (MARSHALL, J., concurring in judgment) (written reasons required when sentencing judge commanded by statute to give priority to particular factors in sentencing).

[14] *Gagnon* incorporates for probation the due process requirements for parole revocation laid out in *Morrissey, supra*, which include "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." 408 U. S., at 489.

[15] Cf. *Ponte, ante*, at 508–513 (MARSHALL, J., dissenting) (written reasons required when necessary to assure meaningful judicial review); *Hewitt*, 459 U. S., at 495 (STEVENS, J., dissenting) (same).

their discretion.[16]   Indeed, the only constitutional limitation on this discretion is that revocation be *a* rational response to the violation; revocation need not be the only available response to be permissible.   See Part II.   The breadth of this discretion significantly attenuates the value that written consideration of alternatives might otherwise play.   Finally, a requirement that sentencers go through on the record an almost limitless variety of options other than revocation would signficantly burden revocation hearings, for given the number of options available a statement of reasons rejecting each of them would amount to a lengthy document.   On balance, then, due process does not require written reasons for rejecting nonincarceration alternatives to revocation.

## II

That written reasons are not required for rejection of alternatives to revocation does not suggest that the Constitution allows probation to be revoked for any reason at all or for any probation violation.   On the contrary, under *Bearden* v. *Georgia*, 461 U. S. 660 (1983), as I read it, the decision to revoke probation must be based on a probation violation that logically undermines the State's initial determination that probation is the appropriate punishment for the particular defendant.   *Bearden* held that probation cannot be revoked for failure to pay a fine and restitution, in the absence of a finding that the probationer has not made bona fide efforts to pay or that adequate alternative forms of punishment do not exist.   If a probationer cannot pay because he is poor, rather than because he has not tried to pay, his failure to make restitution or pay a fine signifies nothing about his continued rehabilitative prospects and cannot form the basis of a valid revocation decision.   Revocation under these circumstances, the Court said, would be "fundamentally unfair."   *Id.*, at 666, and n. 7, 673.

---

[16] Cf. n. 13, *supra.*

Although *Bearden* dealt with only one basis for revocation—failure to pay a fine and restitution—*Bearden*'s holding can be understood only in light of more general principles about the nature of probation and the valid bases for revocation. First, the State has wide latitude in deciding whether its penological interests will best be served by imprisonment, a fine, probation, or some other alternative. But in choosing probation, the State expresses a conclusion that its interests will be met by allowing an individual the freedom to prove that he can rehabilitate himself and live according to the norms required by life in a community. *Bearden* then recognizes that, once this decision is made, both the State and the probationer have an interest in assuring that the probationer is not deprived of this opportunity without reason. See also *Morrissey* v. *Brewer*, 408 U. S. 471, 484 (1972). To the probationer, who is integrating himself into a community, it is fundamentally unfair to be promised freedom for turning square corners with the State but to have the State retract that promise when nothing he has done legitimately warrants such an about-face.[17] Similarly, it is irrational for the State to conclude that its interests are best served by probation, but then to conclude, in the absence of valid cause tracing to the probationer's conduct, that imprisonment is warranted.

Thus, while the State can define the rules of punishment initially, choosing probation or imprisonment, the State can-

---

[17] This principle underlies *Douglas* v. *Buder*, 412 U. S. 430 (1973) *(per curiam)*, where a probationer had been probated on the condition, *inter alia*, that he report to his probation officer "all arrests" for any reason and without delay. Although he was involved in a traffic accident and was cited for driving too fast, Douglas did not report either the incident or the citation for 11 days. His probation was revoked. We reversed, one prong of our holding being that defining these occurrences as an arrest would constitute so unforeseeable and surprising an interpretation of the special probation condition as to violate due process. See *Bouie* v. *City of Columbia*, 378 U. S. 347 (1964).

not change the rules in the middle of the game.[18]   See *Wood*
v. *Georgia*, 450 U. S. 261, 286–287 (1981) (WHITE, J., dis-
senting).   A probation violation must therefore be such as
to make it logical for the State to conclude that its initial
decision to choose probation rather than imprisonment should
now be abandoned.

This principle establishes substantive limitations on proba-
tion revocation decisions beyond which revocation is funda-
mentally unfair.   Although these limits are not stringent, it
is important to note their existence.   For example, a minor
traffic violation, or other technical probation violation, may
well not rationally justify a conclusion that the probationer is
no longer a good rehabilitative risk.[19]   Similarly, certain pro-
bation violations that might justify revocation if committed
early in the probation term might not justify revocation if the
probationer has completed cleanly 14 years, for example, of a

---

[18] This norm of regularity in governmental conduct informs numerous
doctrines.   See, *e. g.*, *United States ex rel. Accardi* v. *Shaughnessy*, 347
U. S. 260 (1954) (Government bound by its own regulations); *Vitek* v.
*Jones*, 445 U. S., at 489 (due process interest created by " 'objective expec-
tation, firmly fixed in state law and official Penal Complex practice' ");
*Connecticut Bd. of Pardons* v. *Dumschat*, 452 U. S., at 467 (BRENNAN, J.,
concurring) (liberty interests arise from "statute, regulation, adminis-
trative practice, contractual arrangement or other mutual understanding
[that establish] that particularized standards or criteria guide the State's
decisionmakers"); *Motor Vehicle Manufacturers Assn.* v. *State Farm Mu-
tual Automobile Insurance Co.*, 463 U. S. 29, 42 (1983) (reasoned explana-
tion required for agency revocation of validly promulgated rule); *Atchison,
T. & S. F. R. Co.* v. *Wichita Bd. of Trade*, 412 U. S. 800, 807–808 (1973)
("There is, then, at least a presumption that [previously chosen] policies
will be carried out best if the settled rule is adhered to").

[19] See generally *Prellwitz* v. *Berg*, 578 F. 2d 190, 193, n. 3 (CA7 1978)
("[T]he due process clause may require more than just proving a breach
of a condition of supervision to justify revoking probation; a subjective
determination of whether the violation warrants revocation is also contem-
plated"); *United States* v. *Reed*, 573 F. 2d 1020, 1024 (CA8 1978) ("The
decision to revoke probation should not merely be a reflexive reaction to
an accumulation of technical violations of the conditions imposed upon the
offender").

15-year term.[20]   No doubt a violation may stir certain biases in judges who believe they have "taken a chance" on a probationer or in probation officers who feel personally at fault, but those biases do not authorize revocations that are solely vindictive or reflexive.   Instead, given the nature of the liberty interest at stake, revocation must reflect a "considered judgment" that probation is no longer appropriate to satisfy the State's legitimate penological interests.   *Williams* v. *Illinois*, 399 U. S. 235, 265 (1970) (Harlan, J., concurring in result).

To some extent, the rationality of the decision to revoke must be evaluated in light of alternative measures available for responding to the violation.   One reason it was arbitrary in *Bearden* to revoke probation for blameless failure to pay a fine was that the State's interest could be "served fully by alternative means."   461 U. S., at 672.[21]   The Court noted

---

[20] See, *e. g.*, *Cottle* v. *Wainwright*, 493 F. 2d 397 (CA5 1974) (describing revocation and imposition of 7-year sentence for two incidents of alleged public drunkenness occurring 2 months before end of 7-year parole term).

[21] That a violation is "willful" in the sense that the probationer had notice of the condition violated and could have adhered to it does not automatically make revocation constitutional.   Probation typically is conditioned on a general obligation to obey all state and local laws, but all citizens live under similar obligations.   Nonetheless, we recognize some violations of the law as minor, such as certain traffic offenses.   Such violations should be treated as no more major when committed by a probationer; they do not generally justify revocation.   That remains true notwithstanding the State's inclusion of a probation condition generally requiring conformity to all state laws.   The minimum requirements of fair process, both substantively and procedurally, are defined by the Due Process Clause, not by state law.   See *Cleveland Bd. of Education* v. *Loudermill*, 470 U. S. 532 (1985).   Statutes authorizing revocation "for any cause" deemed sufficient by the court may, as applied to particular cases, violate these principles. See, *e. g.*, Va. Code § 19.2–306 (1983).

It may be that violation of any special condition of probation, as opposed to violation of the general obligation to obey all laws, would justify revocation if the probationer has advance notice of this possibility.   If a probationer is given a short list of reasonable commands he is obligated to follow, willful refusal to abide by these specific conditions may indicate that the

that the time for making payments could be extended, the fine reduced, or the probationer ordered to perform some form of labor or public service in lieu of the fine. *Ibid.* The State need not establish that revocation is the only means of realizing its penological interests once a probation violation has been committed, but alternative sanctions available to the State surely are a relevant consideration in evaluating whether revocation is logically related to the nature of the underlying violation.

The "touchstone of due process is protection of the individual against arbitrary action of government." *Wolff* v. *McDonnell,* 418 U. S. 539, 558 (1974). Probationers, possessed of the conditional liberty interest created by probation, are protected by this standard, and the decision to revoke probation must therefore be rationally justifiable in light of alternative sanctions available and the nature of the underlying violation. This is not a demanding standard given the breadth of reasons that can justify revocation, but it does impose substantive outer boundaries on revocation decisions.

## III

There can be no doubt that the revocation decision here could have been based on a rational conclusion that respondent's probation violation demonstrated his unsuitability for continued probation. The probation judge found that respondent had committed the felony of leaving the scene of an accident, an accident in which an individual had been struck.[22] Although unrelated to the drug offenses for which respondent was initially sentenced, this violation demonstrates not only that Romano was a reckless driver, but also that he

---

probationer is simply incapable of complying with authority. Such a conclusion would justify revocation. A similar conclusion might logically follow from minor violations of a general-obligation clause if those violations are repeated or flagrant.

[22] This finding of historical fact is subject to the rule of *Sumner* v. *Mata,* 455 U. S. 591 (1982).

either had some reason for seeking to cover up that fact or that he refuses to accept responsibility for his actions. The probation judge might have chosen some option other than revocation, but surely it was not irrational or illogical to conclude that Romano was no longer a good rehabilitative risk. Nor was the probation judge required to go through alternatives to revocation *seriatim* in the record. I therefore join the Court's opinion.