**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Conrado SESMA–HERNANDEZ,
Defendant–Appellant.**

**No. 99–10491.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 20, 2001

Filed June 6, 2001

John C. Lambrose and Jason F. Carr, Assistant Federal Public Defenders, Las Vegas, Nevada, for the defendant-appellant.

Jonathan L. Marcus, Criminal Appellate Section, United States Department of Justice, Washington D.C., Walter L. Ayers, Assistant United States Attorney, Las Vegas, Nevada, and for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, HUG, KOZINSKI, TROTT, RYMER, McKEOWN, W. FLETCHER, FISHER, PAEZ, BERZON and TALLMAN, Circuit Judges.

SCHROEDER, Chief Judge:

We reheard this case en banc in order to resolve some inconsistencies in our case law regarding what a district court must

do, when revoking a defendant's probation or supervised release, to provide the defendant with due process and ensure an adequate record for our review. Federal Criminal Procedure Rule 32.1(a)(2) provides that, in the context of a revocation proceeding, a defendant must receive written notice of the alleged violations, disclosure of the evidence to be used, an opportunity to appear and to present evidence, the opportunity to cross-examine adverse witnesses, and notice of the right to be represented by counsel. The Supreme Court has further held that the right to due process guaranteed by the Fifth Amendment requires a written statement of the reasons for revoking supervised release and the evidence relied upon in doing so. *See Black v. Romano,* 471 U.S. 606, 611–12, 613–14, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985); *Morrissey v. Brewer,* 408 U.S. 471, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

Our circuit is among a majority that have held that an oral statement of findings made on the record—provided that a written transcript of those findings can be made available—is sufficient to satisfy the Supreme Court's requirement of findings "in writing." This holding may be seen as part of a general movement in favor of electronically transcribed proceedings in lieu of separate documents. *See, e.g.,* Fed. R.Civ.P. 52(a) (requiring district courts to make specific findings after a bench trial, and considering it "sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence").

In *United States v. Daniel,* we went further and held that not even oral findings were required; rather, we held that a district court's conclusory statement on the record that the government had sustained its burden of proving the charges was sufficient, so long as the record con-

tained evidence to support the conclusion that the defendant committed the charged violations. *See* 209 F.3d 1091, 1093–94 (9th Cir.), *amended by* 216 F.3d 1201 (9th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 499, 148 L.Ed.2d 469 (2000). The three-judge panel in this case followed *Daniel* in holding that a similar statement by the district court sufficed because the government presented sufficient evidence to support the charged violations. *See United States v. Sesma–Hernandez,* 219 F.3d 859, 861 (9th Cir.), *reh'g en banc granted,* 234 F.3d 493 (9th Cir.2000). Judge Reinhardt specially concurred on the basis that the panel's holding was compelled by *Daniel. See id.* at 861–63 (Reinhardt, J., concurring).

In his petition for rehearing en banc, Sesma–Hernandez argues that separate written findings remain constitutionally required, although he acknowledges that a majority of the circuits that have addressed the issue have approved oral findings made on a transcribed record. He argues more vehemently that upholding a revocation of supervised release on the basis of a conclusory statement that the defendant committed the charged violations, and without reference to the specific evidence relied upon, violates the due process the Supreme Court sought to ensure in *Morrissey. See Black,* 471 U.S. at 611–12, 613–14, 105 S.Ct. 2254; *Morrissey,* 408 U.S. at 488–89, 92 S.Ct. 2593.

We now adhere to our earlier holding and to the view of the other circuits that have held that oral findings on a transcribed record are sufficient to meet the "in writing" requirement of due process. We overrule our prior precedent, however, to the extent that it suggests that due process is always satisfied by a conclusory statement that charged violations have been proved. In cases where the defendant either disputes the evidence the gov-

ernment uses to support the charges or raises an affirmative defense, we hold that the district court must make sufficient findings on the record to identify the violation and the evidence relied upon to establish it. Due process requires this in order for this court to conduct an informed review of the propriety of the revocation.

Applying that holding to the facts of this case, however, we affirm the district court's revocation of Sesma–Hernandez's supervised release because the record reflects that, in addition to the conclusory statement relied upon by the three-judge panel, the district court did make sufficient additional findings with respect to the disputed violations.

## FACTUAL BACKGROUND

Sesma–Hernandez completed the 26–month sentence of imprisonment imposed by the district court for distribution of a controlled substance, and began serving a three-year term of supervised release in October of 1998. In July of 1999, his probation officer filed a revocation petition alleging that Sesma–Hernandez had committed several separate violations of the conditions of his supervised release.

The most serious was the allegation that Sesma–Hernandez had violated Nevada state law by committing "Battery/Domestic Violence." Other alleged violations included, *inter alia*, failure to report to his probation officer, failure to work at a lawful occupation, and failure to submit to drug testing. During the revocation hearing, the district court struck specific charged allegations pertaining to dates when Sesma–Hernandez was undisputedly in the custody of the Immigration and Naturalization Service ("INS").

Sesma–Hernandez challenged only the battery charge. Defense counsel cross-examined the government's two witnesses who positively identified Sesma–Hernan-

dez as the man they saw drag a woman into a barroom parking lot and brutally beat her. To corroborate the witnesses' testimony, the prosecutor offered an audiotape of the 911 call made on the night of the assault. The caller related the license number of the suspect's car. When the defense objected, the district court excluded the tape as unnecessary, finding that the witnesses' testimony sufficiently identified the perpetrator as Sesma–Hernandez: "[H]aving listened to the tape, the Court finds that it doesn't assist the Court in making a finding on the purpo[rt]ed violation. The witnesses' testimony is sufficient. . . ."

Later in the hearing, the defense tried to present testimony casting doubt upon the government eyewitnesses' ability to identify the victim. The district court rejected the offer as irrelevant, stating that the government had already established that the witnesses could identify the assailant. The court explained that the government had already proved its point: "Whether or not she can identify the victim is not at issue. The issue is whether or not they could identify the perpetrator, and they did that to the satisfaction of the Court."

Sesma–Hernandez's probation officer, Pedro Durazo, testified about the factual bases for the remaining charges. Apart from the battery charge, Sesma–Hernandez did not contend that the allegations set forth in the charging document were incorrect. He did offer his INS detention as an affirmative defense to some of the allegations and, as a result, the court struck two date-specific charges. The court expressly rejected defense counsel's argument that it was the government's burden to prove that Sesma–Hernandez was not in detention at the time of the other charged violations. With respect to Sesma–Hernandez's argu-

ment that his financial insolvency prevented him from paying the $50 special assessment fee, the court observed that he had money to pay for the things he wanted, such as a pager and other possessions.

The defense's principal legal arguments were whether the notice was sufficient that "battery," and not "domestic violence," was the actual conduct charged to have violated the conditions of supervised release, and whether the district court improperly relied on its knowledge of events outside the record of the revocation proceeding.

Following argument, the district court concluded by addressing those contentions:

Let me just state that I think there is sufficient evidence that's been presented here, regardless of the Court's knowledge of the events that transpired prior to the revocation. The Court does find that there is sufficient evidence in the record. The Court denied the motion to dismiss on the basis of the alleged failure to give notice of the crime. The Court specifically finds that there was sufficient notice given that the crime that was being charged was the battery. The Court finds that the Government has established by a preponderance of the evidence that the violations that were set forth in the petition have occurred.... [T]he Court finds that violation of conditions have been established by a preponderance of the evidence and that the violation warrants revocation.... [T]he nature of the violations and the extent of the violations do warrant revocation. So, therefore, it is the Court's determination that revocation is appropriate in this case.

Neither counsel indicated there was any confusion about the district court's findings that Sesma–Hernandez violated the conditions of his release. Defense counsel said that he understood and respected the district court's decision: "You've determined that he violated the supervised release. I respect that. I would just ask the Court to fashion a sentence that takes the equities into consideration."

## DISCUSSION

█ In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held for the first time that revocation of parole must comport with procedural due process. Although the Court declared its unwillingness to "write a code of procedure," it identified a "few basic requirements" that must accompany any future revocation. *Morrissey,* 408 U.S. at 488, 490, 92 S.Ct. 2593. Among those requirements is "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.* at 489, 92 S.Ct. 2593. In a later case, the Court made clear that other types of revocations are subject to "the conditions specified in *Morrissey v. Brewer.*" *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (extending *Morrissey* to revocations of probation).

The rationale for imposing such procedural restraints upon the revocation of a discretionary grant of freedom can be found both in the interests of the sentenced individual and in the interests of society as a whole. "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Morrissey,* 408 U.S. at 482, 92 S.Ct. 2593. In addition, the "parolee is not the only one who has a stake in his conditional liberty." *Id.* at 484, 92 S.Ct. 2593. Society has an interest in "treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of

rehabilitation by avoiding reactions to arbitrariness." *Id.*

The "written statement" requirement provides benefits in both the sentence and the appellate review processes because it "helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black v. Romano,* 471 U.S. 606, 613–14, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). As we recognized in *United States v. Daniel,* the majority of the circuits that have addressed the "written statement" requirement in the context of a revocation proceeding have held that oral findings on the official court record satisfy due process. *See* 209 F.3d 1091, 1093 (9th Cir.), *amended by* 216 F.3d 1201 (9th Cir.), *cert. denied,* — U.S. ——; 121 S.Ct. 499, 148 L.Ed.2d 469 (2000); *see also United States v. Copeland,* 20 F.3d 412 (11th Cir.1994) (per curiam) (supervised release); *United States v. Copley,* 978 F.2d 829 (4th Cir. 1992) (supervised release); *United States v. Barth,* 899 F.2d 199 (2d Cir.1990) (probation); *United States v. Yancey,* 827 F.2d 83 (7th Cir.1987) (probation); *Morishita v. Morris,* 702 F.2d 207 (10th Cir.1983) (pre-*Black v. Romano,* habeas challenge to probation proceedings).

An older, Eighth Circuit case indicates that separate written findings, independent of the transcript, are required. *See United States v. Smith,* 767 F.2d 521, 524 (8th Cir.1985). More recently, however, the Eighth Circuit appears to have materially reduced that requirement by holding, in the context of an appeal challenging a sentence imposed under the Guidelines, that not only is a separate document not required, but that findings resolving a defendant's specific objections need not be made at all, so long as the record supports the district court's rejection of the defen-

dant's position. *See United States v. Patterson,* 946 F.2d 1371, 1372 (8th Cir.1991) (per curiam). Although we essentially endorsed the *Patterson* position in *Daniel,* we now conclude that it is contrary to the better-reasoned decisions of the majority of circuits.

■ Those decisions require district courts to articulate findings as to all disputed matters sufficient for the appellate courts to engage in an informed review of the revocation decision and to determine whether it was adequately supported by the factual record. As the Second Circuit explained:

> "The basis for requiring a written statement of facts is to ensure accurate fact finding and to provide 'an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence.'" *Yancey,* 827 F.2d at 89 (*quoting Black,* 471 U.S. at 613–14, 105 S.Ct. 2254). We agree with the Seventh Circuit that "these goals are satisfied when the oral findings in the transcript enable a reviewing court to determine the basis of the judge's decision to revoke probation." *Id.; see also Morishita,* 702 F.2d at 210. Of course, we might rule differently were we faced with "general conclusory reasons by the district court for revoking probation," [*United States v.] Lacey,* 648 F.2d [441, 445 (5th Cir. Unit A 1981)], or with a record from which we were "unable to determine the basis of the district court's decision to revoke probation." *Smith,* 767 F.2d at 524. But absent such situations, to demand that a district court turn its transcribed oral findings into a written order seems to us unduly formalistic.

*Barth,* 899 F.2d at 201–02. We agree.

The position we now adopt is analogous to the one we adopted in the context of a sentencing appeal, where we rejected a

defendant's contention that due process required the district court to make comprehensive findings with respect to his role in the offense. *See United States v. Rigby,* 896 F.2d 392, 394–95 (9th Cir.1990). There, we held that a district court was not required to reject the defendant's specific factual contention when determining that the defendant was not a minor participant, so long as it was clear that the court resolved the essential dispute by relying on the Presentence Report and its addendum. *See id.* at 394. The parties had been given an opportunity to present evidence regarding the disputed issue, and "the district court clearly stated that it found the position as stated in the Probation Office's addendum to be the correct one.... The record at the sentencing hearing reflects no confusion on anyone's part as to what the district court decided." *Id.*

■ Applying that reasoning to the record in this case, we conclude that the district court did indeed deal with all of the specific objections raised by Sesma–Hernandez, and expressly referred to the evidence that it regarded as sufficient to prove the only factually disputed charge. As to that charge, the battery charge, the court made it clear that it regarded the two eyewitnesses' testimony as sufficient to establish that Sesma–Hernandez committed the battery: "The issue is whether or not [the eyewitnesses] could identify the perpetrator, and they did that to the satisfaction of the Court." Later in the hearing, the district court specifically resolved both Sesma–Hernandez's objection to the sufficiency of the notice and his additional allegation that the court had relied on matters outside the record.

While Sesma–Hernandez now contends that the district court should have made comprehensive findings as to the evidence supporting each of the undisputed charges, the district court correctly stated that the evidence supported those charges. We have no difficulty understanding the district court's decision and the basis for it. We can easily review the record before us to determine that the government proved those uncontested charges by the testimony of Sesma–Hernandez's probation officer, who provided the only relevant evidence on those charges. The district court dealt with all of the legal contentions raised by Sesma–Hernandez. In the absence of any dispute as to the nature of the charges or to the evidence supporting them, more specific findings would have served no purpose.

■ Accordingly, we hold that specific findings with reference to the evidence supporting charges are not constitutionally required where a defendant raises no objection to the sufficiency or accuracy of the evidence, and the district court finds that the government sufficiently proved the charged conduct. Where the parties have any specific disagreements, however, the record must clearly reflect that the court considered the position of each of the parties and must identify the basis on which the court resolved any disputes at the time of the hearing.

Those standards are fully satisfied here. The district court not only found that the government had proved each of the charges, but resolved the disputed battery charge, noting the sufficiency of the witnesses' testimony on which it relied. The district court also dealt specifically with Sesma–Hernandez's objection to the nature of the notice and with his position that the defense should be permitted to put on testimony that the witnesses who identified Sesma–Hernandez as the perpetrator were unable to identify the victim.

On the merits of those challenges, we agree with the panel that the notice was adequate and that while the proffered evi-

**410**

dence on the eyewitnesses' ability to identify the victim may have had some relevance, any error was harmless. *See United States v. Havier*, 155 F.3d 1090, 1092 (9th Cir.1998) (reviewing errors at a revocation proceeding for harmless error).

AFFIRMED.