No. 05-413

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 266

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

ALLEN EUGENE BAIRD,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Sanders, Cause No. DC 04-016
The Honorable C. B. McNeil, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

        Noel K. Larrivee, Larrivee Law Offices, Dayton, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; Micheal S. Wellenstein, Assistant
Attorney General, Helena, Montana

        Robert Zimmerman, County Attorney, Thompson Falls, Montana

_____

Submitted on Briefs:  May 3, 2006

Decided:  October 17, 2006

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Allen Eugene Baird (Baird) appeals an order of the Twentieth Judicial District Court, Sanders County, revoking his deferred sentence and imposing a sentence of five years at Montana State Prison, with all but 60 days suspended.  We affirm.

¶2    We restate the issues that Baird raises as follows:

¶3    1.  Was there sufficient information before the District Court to revoke Baird's deferred sentence?

¶4    2.  Did the District Court deny Baird due process by failing to advise him of the reasons his deferred sentence was revoked?

¶5    3.  Did the District Court err by not allowing Baird to present testimony regarding his conduct?

## BACKGROUND

¶6    Baird and Tamara Walker (Walker) are the parents of a child (S.B.).  They separated in July 2003, and Walker retained custody of S.B.  Walker obtained a Temporary Order of Protection against Baird on January 8, 2004, that prohibited Baird from coming within one-thousand feet of Walker.  On February 23, 2004, the District Court modified the Order of Protection and issued an Interim Parenting Plan and Order of Protection, directing that Baird and Walker exchange custody of S.B. inside the Sanders County Sheriff's Office.  The order provided that "[e]xcept for the exchange of the child, there shall be no contact between the parties . . . ."

¶7    Baird violated the Order of Protection and its amendments.  Thereafter, he was charged with and plead guilty to felony stalking.  His sentence was deferred for two years

2

and he was placed under the supervision of the Department of Corrections. The deferred sentence included provisions that Baird was to obey all laws, not use or possess alcohol or drugs, and have no contact with Walker other than that necessary to exchange the child with her at the Sanders County Sheriff's office, as stated in the Order of Protection or a related court approved parenting plan.

¶8     On April 18, 2005, the State filed a petition to revoke Baird's deferred sentence. The State's Report of Violation, attached to its Petition to Revoke Probation, alleged that Baird violated his probation by: (1) violating the Order of Protection on six occasions; (2) using an illegal drug; and (3) having contact with the victim (Walker) not allowed by the protection order or parenting plan. Baird denied that he had violated the terms of his deferred sentence and a hearing on the petition to revoke was held on May 10, 2005. At the hearing, each side called witnesses to testify and provided the court with documentary exhibits.

¶9     The information presented to the District Court by the State was that Baird delivered to Walker a photograph of himself and S.B. and also a Valentine's Day card. These actions were considered to be a violation of the no contact order. The probation officer testified that a deputy sheriff had reported that Baird confronted Walker, who was in the bathroom at the Sheriff's Office, by holding the door open with his foot, declaring his love for her and questioning her about becoming a family again. The same witness also testified that Walker had reported to her that on a different occasion, after exchanging the child, Baird followed Walker to her car and declared his love for her. On another occasion, after completing a visitation exchange at the Sheriff's Office and

getting back into his truck, Baird returned to the Sheriff's Office where Walker and S.B. would soon be leaving. The next day, after yet another exchange of the child at the Sheriff's Office, Baird remained in the vicinity of the courthouse so that Walker would have to observe him. Also, the District Court heard testimony that Baird had admittedly used marijuana on at least one occasion.

¶10 Baird testified on his own behalf at the hearing. He said that he was just trying to be a good parent by delivering the Valentine's Day card and the photograph. He did not deny he made any of the contacts with Walker as testified to by the State's witnesses.

¶11 After hearing this testimony, the District Court stated on the record:

> The Court finds that the State has satisfied its burden under the Petition To Revoke Probation and the defendant's deferred sentence is revoked.

¶12 The District Court then heard recommendations as to sentencing from counsel for the State and from Baird's counsel. Baird was offered an opportunity to make a statement to the Court, and he did so. He stated that he could not understand why Walker was under stress from him, and that he was under as much stress as Walker. He said that all he wanted was to get along with everybody and have a relationship with his children. Again, Baird did not deny that he had confronted Walker in violation of the no contact order. He requested a suspended sentence.

¶13 The District Court then pronounced judgment as follows:

> THE COURT: It's the sentence and judgment of the Court to grant the revocation of the defendant's deferred sentence and the defendant is sentenced to 5 years in the Montana State Prison. I suspend all but 60 days, which are to be served in the Sanders County Jail.
> As condition to the suspended portion of the sentence, the conditions which were incorporated in the Judgment, filed July 27, 2004, are again incorporated by reference.

4

The reasons for the sentence are that the defendant obviously doesn't get it. He thinks he just stated to the Court that he has been intimidated. Sir, you've been convicted of felony stalking. You have to stay away from the victim. Now you're going to serve 60 days in the Sanders County Jail. If you don't stay away from Tamara Walker when you got [sic] out after your 60 days, you're going to prison for 5 years. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And you are not being intimidated, sir. Ms. Walker is being intimidated because you've been convicted of intimidating her. That will not be tolerated by the Court. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Very well. You've got 60 days to serve, following which you've got the balance of 5 years suspended in the Montana State Prison. And you're going to prison if you don't leave her alone. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Further reasons for the sentence is it will provide punishment to the defendant and an opportunity for his rehabilitation. And you better get it while you're sitting in jail thinking about it. You better leave her alone. Any doubt about that, sir?

THE DEFENDANT: (Nodded.)

¶14 In its written judgment the District Court stated:

The Court finds based upon the Report of Violation filed by the Probation Officer and testimony heard in open Court, that the Defendant is in violation of the terms and conditions of his probationary sentence; and that the State has satisfied its burden of proof.

## STANDARD OF REVIEW

¶15 We review a district court's decision to revoke a deferred sentence to determine whether the district court abused its discretion. *State v. Welling*, 2002 MT 308, ¶¶ 5, 8, 313 Mont. 67, ¶¶ 5, 8, 59 P.3d 1146, ¶¶ 5, 8. Whether a district court has violated a probationer's constitutional right of due process is a question of law and our review is plenary. *State v. Finley*, 2003 MT 239, ¶ 10, 317 Mont. 268, ¶ 10, 77 P.3d 193, ¶ 10.

5

## DISCUSSION

### Issue One:

¶16 Was there sufficient information before the District Court to revoke Baird's deferred sentence?

¶17 Baird first argues the information presented to the District Court was insufficient to revoke his deferred sentence. The State has the burden of proving the violation of a deferred sentence by a preponderance of the evidence. Section 46-18-203(6), MCA; *State v. Aune*, 2003 MT 3, ¶ 21, 314 Mont. 1, ¶ 21, 61 P.3d 785, ¶ 21. Revocation of a deferred sentence is proper if the district court is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. *State v. Averill*, 2001 MT 161, ¶ 22, 306 Mont. 106, ¶ 22, 30 P.3d 1059, ¶ 22. There are no minor violations of probationary agreements and even one violation may be sufficient for revocation. *Aune*, ¶ 33.

¶18 Baird contends that any reference to illegal drug use should be disregarded because the District Court sustained all his objections regarding its introduction. However, the record shows that the State presented uncontroverted evidence of Baird's admissions to his use of marijuana. The District Court could reasonably find Baird's admitted use of marijuana was a violation of the law and thus a violation of his deferred sentence.

¶19 Baird contends that he was found to have violated the conditions of his probation because he came within one-thousand feet of Walker at the Sheriff's Office, even though he was allowed to approach her in order for him to exchange custody of his daughter at

6

the Sanders County Sheriff's Office.  However, the basis of Baird's violations was not his proximity to Walker at the Sheriff's Office when custody of the child was transferred, but his behavior after he did so.  The District Court reasonably found that Baird's unwelcome declarations of love and his loitering about the Sheriff's office after the visitation exchanges in order to have contact with Walker were in violation of the condition of his probation that he have no contact with Walker other than that necessary to exchange the child.

¶20     Baird also contends that the District Court erred in relying on hearsay or "double hearsay" testimony regarding his alleged violations.  It is true that the incidents where Baird confronted Walker with his undying love were not witnessed by the witness that testified at the revocation hearing.  However, a probation revocation hearing is not a trial, but rather a hearing to establish whether or not a probation violation has occurred.  *State v. Pedersen*, 2003 MT 315, ¶ 20, 318 Mont. 262, ¶ 20, 80 P.3d 79, ¶ 20.  The rules of evidence do not apply at a probation revocation hearing.  M. R. Evid. 101(c)(3); *Pedersen*, ¶ 20.  This information was properly considered by the District Court.  Further, Baird did not deny that these incidents occurred.

¶21     Baird also contends on appeal that the District Court should have considered the Valentine's Day card he gave to S.B. to deliver to Walker, and the photo of himself he placed in the diaper bag, as simply the actions of an attentive father.  Although delivering a Valentine's Day card and a photograph to Walker may have been acceptable behavior in a normal family environment, Baird was specifically ordered to have no contact with her.  Put into the context of a pattern of repeated harassment and intimidation, we

conclude the District Court could reasonably find a photograph of Baird placed in a three-year-old's diaper bag and a Valentine's Day card in Baird's writing is a violation of the conditions of Baird's probation.

¶22 We conclude that there was sufficient evidence presented at the revocation hearing for the District Court to reasonably determine Baird violated his probation.

Issue Two:

¶23 Did the District Court deny Baird due process by failing to advise him of the reasons his deferred sentence was revoked?

¶24 Baird argues that he was denied due process because the District Court failed to set forth, in a written statement, the evidence relied upon and the underlying reasons for the revocation of his deferred sentence, as required by *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761-62 (1973) (due process requires that upon revocation of a probation the defendant receive a written statement of the evidence relied upon by the arbiter and the reason for revoking probation).

¶25 Baird erroneously asserts that *Gagnon* was subsequently codified in § 46-18-102(3)(b), MCA, and followed by this Court in *State v. Stumpf*, 187 Mont. 225, 609 P.2d 298 (1980) (*See e.g. State v. Goulet*, 277 Mont. 308, 310, 921 P.2d 1245, 1246 (1996)). Section 46-18-102(3)(b), MCA, requires the sentencing court to "clearly state for the record the reason for imposing the sentence." In *Stumpf*, this Court held that the district court abused its discretion when it failed to specify the reasons for imposing a particular sentence. *Stumpf*, 187 Mont. at 228, 921 P.2d at 299. As the State correctly points out, Baird's reliance on § 46-18-102(3)(b), MCA, and *Stumpf* is misplaced because they

8

address whether the district court stated its reasons for the *imposition* of a particular sentence, not the *revocation* of a probationary sentence. –

¶26 Baird asserts, also erroneously, that § 46-18-203(7)(b), MCA, requires the judge to "state the reasons for the judge's determination in the order" revoking a suspended or deferred sentence. However, § 46-18-203(7)(b), MCA, requires the judge, after considering "any elapsed time," to state the reasons for their determination of whether they "allow all or part of the time as a credit against the sentence or reject all or part of the time as a credit." The statute only deals with accepting or rejecting time elapsed on a probationary sentence as a credit against the sentence, not the underlying reason for the revocation of the sentence. *See State v. Senn*, 2003 MT 52, ¶ 29, 314 Mont. 348, ¶ 29, 66 P.3d 288, ¶ 29 (holding that the district court's ten reasons contained in its Judgment for denying the defendant credit for any time between the date of his conviction and the date of the Judgment satisfied the requirements of § 46-18-203(7)(b), MCA).

¶27 Minimum due process requirements for the revocation of a probationary sentence include "a written statement of the evidence relied upon by the arbiter and the reason for revoking probation." *Finley*, ¶ 31 (citing *Gagnon*, 411 U.S. at 786, 93 S. Ct. at 1761-62 (1973) (applying the minimum due process requirements for *parole* revocation hearings in *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972), to *probation* revocation hearings)). The U.S. Supreme Court has since noted that a written statement assures "accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black v. Romano*, 471 U.S. 606, 613-14, 105 S. Ct. 2254,

2259 (1985).

¶28 In deference to State Court systems, the U.S. Supreme Court recognized and sought to "preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial." *Black*, 471 U.S. at 613, 105 S. Ct. at 2258 (citing *Morrissey*, 408 U.S. at 489-90, 92 S. Ct. at 2604-05; and *Gagnon*, 411 U.S. at 787-90, 93 S. Ct. at 1762-64). In establishing the "minimum requirements of due process" for parole revocation hearings, the Court stated, "We have no thought to create an inflexible structure for parole revocation procedures. The[se] few basic requirements . . . should not impose a great burden on any State's parole system." *Morrissey*, 408 U.S. at 490, 92 S. Ct. at 2604. The U.S. Supreme Court has recognized flexibility in the application of the *Gagnon* written statement requirement, finding that it may be satisfied by the sentencing court's memorandum and hearing transcript read together. *Black*, 471 U.S. at 616, 105 S. Ct. at 2260.

¶29 The 9th Circuit Court of Appeals has also found that a district court's conclusory statement on the record that the government had sustained its burden of proof in a revocation hearing was adequate, provided that the record had sufficient evidence to find the defendant committed the charged violations. *U.S. v. Daniel*, 209 F.3d 1091, 1093-94 (9th Cir. 2000). A year later, the 9th Circuit amended *Daniel* and held that:

> [S]pecific findings with reference to the evidence supporting charges are not constitutionally required where a defendant raises no objection to the sufficiency or accuracy of the evidence, and the district court finds that the government sufficiently proved the charged conduct. Where the parties have any specific disagreements, however, the record must clearly reflect that the court considered the position of each of the parties and must identify the basis on which the court resolved any disputes at the time of the hearing.

10

*U.S. v. Sesma-Hernandez*, 253 F.3d 403, 409 (9th Cir. 2001). The *Sesma-Hernandez* court noted that the written statement allowed the reviewing court to "engage in an informed review of the revocation decision and to determine whether it was adequately supported by the factual record." *Sesma-Hernandez*, 253 F.3d at 408. The court reasoned that these goals were satisfied "when the oral findings in the transcript enable a reviewing court to determine the basis of the judge's decision to revoke probation." *Sesma-Hernandez*, 253 F.3d at 408 (citations and quotations omitted).

¶30  In the same manner as the federal courts, this Court has held that a sentencing court's memorandum combined with the transcript of the hearing may provide the necessary written statement explaining the evidence relied upon and the reason for the decision to revoke the probation. *State v. Richardson*, 2000 MT 72, ¶ 15, 299 Mont. 102 ¶ 15, 997 P.2d 786, ¶ 15. Due process is achieved when the oral and written record support accurate factfinding and appellate review. *See Richardson*, ¶ 15; *Black*, 471 U.S. at 615-16, 105 S. Ct. at 2260. We conclude that the due process requirements of a written statement by the district court may be satisfied by a record that provides adequate factfinding and an adequate basis for appellate review.

¶31  In the present case, the oral and written records collectively leave no doubt that the District Court revoked Baird's probation because Baird continued to approach Walker, harassing and intimidating her, in violation of the terms of his probation. The District Court explicitly found that Walker was "being intimated" by Baird. The District Court told Baird that he had to "stay away from the victim" and that Baird would go to prison if he did not "leave her alone." When Baird's attorney asked Baird if he could take

11

responsibility for what he had done and if he would abide by conditions imposed by the court, Baird replied that he could and would. Three times the District Court asked Baird if he understood what he had to do to stay out of prison, and he responded that he did.

¶32 Read as a whole, the oral and written records from the District Court provide an adequate basis for this Court's review, as required by *Black* and *Richardson*. This Court has no difficulty identifying and evaluating the information used by the District Court to revoke Baird's deferred sentence. The record is adequate to determine that the District Court's revocation of Baird's probation was based on "permissible grounds supported by the evidence." *See Black*, 471 U.S. at 613-14, 105 S. Ct. at 2259. We conclude that the District Court's written order and hearing transcript meet the minimal due process requirements required by *Gagnon* and its progeny.

Issue Three:

¶33 Did the District Court err by not allowing Baird to present testimony regarding his conduct?

¶34 In presenting this issue, Baird simply states in his brief that his counsel sought to establish the terms and manner of the visitation as it related to the allegations in the Report of Violation and that he was denied the opportunity to address this issue. Thus, he argues that he was denied a fair hearing. This argument is made in a single paragraph, and without citation of authority. There is no indication what Baird's specific complaints are. There is no citation to legal authority which would place the District Court in error. We therefore decline to consider this issue further. M. R. App. P. 23(a)(4); *State v. Bailey*, 2004 MT 87, ¶ 26, 320 Mont. 501, ¶ 26, 87 P.3d 1032, ¶ 26.

¶35    Affirmed.


                                        /S/ JOHN WARNER



We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS