**UNITED STATES of America**

v.

**Charles Robert WREN.**

Civ. A. No. 187–150.

United States District Court,
S.D. Georgia,
Augusta Division.

March 2, 1988.

---

Roy E. Paul, Savannah, Ga., for Wren.

Asst. U.S. Atty. J. Michael Faulkner, Augusta, Ga., for the U.S.

## ORDER

ALAIMO, Chief Judge. '

Defendant, Charles Wren, currently incarcerated in the Federal Correctional Institution in Lexington, Kentucky, moves to vacate the revocation of his probation pursuant to 28 U.S.C. § 2255. For the following reasons, the motion will be denied.

FACTS

Wren was originally convicted by a jury on February 16, 1979, for possession of stolen mail, uttering a forged document and conspiracy under a two-count indictment. On June 1, 1979, this Court imposed a modified probated sentence. On March 23, 1984, Wren's probation was revoked following a hearing and he was given an eight-year sentence. The Court found that Wren violated the terms of his probation by planning and participating in a drugstore burglary; by participating in an extortion attempt on a bank; and by possessing firearms.

The revocation was upheld on direct appeal. 751 F.2d 1259 (11th Cir.1984) (table). Wren then moved for reduction of sentence under Fed.R.Crim.P. 35, which was denied without a hearing. The denial was affirmed. 786 F.2d 1179 (11th Cir.1986) (table). Wren then moved to vacate his original 1979 sentence under § 2255. The motion was denied and is presently on appeal. Eleventh Circuit Docket No. 87–8461.

 Wren has now filed this § 2255 motion collaterally attacking the revocation of his probation in March 1984.[1] Wren's

---

1. In the limited context of a federal probationer's attack on his probation revocation proceeding, the Court agrees that § 2255 provides an appropriate remedy. A revocation petition, if granted, essentially imposes a new sentence on the defendant. As such, a motion to vacate *that* sentence appears to fall within the language of § 2255. The Court acknowledges the Advisory Committee Notes to Section 2255 Proceedings, Rule 1, which state, in part:

 The challenges of decisions such as the revocation of probation or parole are not appropriately dealt with under 28 U.S.C. § 2255,

 which is a continuation of the original criminal action. Other remedies, such as habeas corpus, are available in such situations.

 The statement is clearly correct regarding challenges of parole determinations and eligibility. Those decisions are made outside of the sentencing court, by a Commission unrelated to the court. The necessary witnesses and documents to support a challenge to a parole decision will not necessarily be found anywhere near the sentencing court. A petition for *habeas corpus* is appropriate in such a situation. *See, e.g.,*

primary contention is that he received ineffective assistance of counsel at the revocation hearing. He also asserts that this Court erred at the hearing because it assisted the Government during the hearing; and because it relied on uncounseled prior convictions in imposing sentence. Only his ineffectiveness claim warrants extended discussion.

Wren was arrested for probation violations on February 27, 1984. On March 4, 1984, his appointed counsel, Assistant Public Defender Martin Puetz, perfected Wren's release on a property bond. Wren then met with Puetz and planned a defense to the revocation.

A revocation hearing was set for March 23, 1984. According to Wren, three days prior to the hearing Puetz informed him that Puetz' associate, Public Defender Davis Cohen, would be representing Wren at the hearing. The reason given to Wren, and repeated to the Court at the hearing, was that the 23rd was Puetz' birthday.

Although they had conferred by telephone several days prior, Cohen met Wren for the first time in the lobby of the Court less than 15 minutes prior to the hearing. At that time, Wren was told that Cohen planned to attempt to dismiss the proceeding due to the Government's delay in seeking the revocation. The hearing proceeded as follows:

At the outset, Cohen informed the Court that he had just met Wren and that he was substituting for Puetz. Cohen then proceeded to support the dismissal for delay theory with Wren's testimony and through argument. The Court reserved a ruling on the motion and the Government was directed to present its case regarding the probation violations.

The Government commenced by detailing the extortion attempt. James Menger was the manager of a branch bank in Augusta, Georgia, and he testified that on September 23, 1982, he received a phone call at the bank from an unidentified male. The caller told Menger to remove all of the money from the bank vault and deliver it to a shopping center in return for his wife who was supposedly abducted. When Menger called his wife at her place of work, the phone lines were dead; and it was established that they had been recently cut by unknown person(s). However, Mrs. Menger—who had not been abducted—was quickly located, and no money was removed from the bank or delivered to any extortioners.

The evidence establishing Wren's involvement in the attempt consisted primarily of the testimony of James Florida, a deputy sheriff and friend of Wren; the testimony of James Davies, an FBI agent; and transcripts of tape recorded conversations between Wren and Florida. While the recorded conversations only circumstantially implicated Wren in the crime, Florida also related to the Court an unrecorded conversation in which Wren admitted that he placed the call to Menger at the bank.

Wren neither admitted nor denied that he was involved in the crime. Rather, during his testimony regarding the delay motion, he testified that he had no memory of where he was during that day. Cohen's cross-examination of Florida was vigorous. He attempted to discredit Florida generally by casting the entire relationship between

*United States v. Plain,* 748 F.2d 620 (11th Cir. 1984).

When a defendant challenges the constitutionality of his revocation proceeding, however, he is challenging one aspect of the continuing criminal case against him. The interested witnesses, parties and documents will all be found in the sentencing court. There appears to be no guidance, apart from the statement quoted above, as to the appropriate remedy in this situation; and in this case, it would be wasteful and illogical to force Wren to file a petition in Kentucky to challenge events occurring here.

In the instant case, Wren's most appropriate course of action would have been to raise all of his claims relating to his sentence—both as to its initial imposition and its subsequent revocation—in his *first* § 2255 motion, which is presently on appeal. His failure to do so raises the spectre of successive petitions and arguably warrants dismissal under Rule 9(b). Wren's failure to join his ineffectiveness claim in his prior motion verges on abuse of the procedure. The Court, however, prefers to dispose of his claim on its merits.

Wren and Florida in a conspirational light. He also attempted to discredit Florida's recollection of Wren's "admission conversation" by pointing out that it appeared to be the only unrecorded conversation, despite Florida's then-existing cooperation with the FBI and access to recording devices.

The Government next proceeded to establish Wren's involvement in the drug-store burglary. Walter Miller, testifying under a plea agreement with the federal prosecutors, outlined various conversations he had with Wren and others regarding proposed bank burglaries and described in detail a burglary of a Revco drugstore in Augusta which was designed to be a test run for more lucrative jobs. He testified that Wren participated in the planning of the burglary and that Wren was the driver and lookout for the job. He also stated that Wren insisted that the four perpetrators carry firearms and that Wren took a sawed-off automatic rifle to the job.

Cohen cross-examined Miller and stressed his unreliability due to his extensive rap-sheet and by virtue of his presumed self-interest arising from the plea agreement.

The Government then produced Joseph Berry, who was also involved in the burglary. Berry, testifying under a plea agreement, essentially repeated the scenario described by Miller. He added that Wren provided him with a .32 caliber revolver for the job. He also testified that the proceeds from the burglary—primarily drugs—were split evenly among the four participants and that Wren took his split.

Again Cohen attempted to impeach Berry by stressing his extensive rap-sheet and his plea agreement.

The final probation violation charged was possession of firearms. In addition to the testimony of Miller and Berry, the Government produced James Ford, a Richmond County Police Sergeant, who testified that he saw guns at Wren's pawn shop on January 20, 1983; that the guns were in a desk drawer; and that he and Wren had a brief discussion about them when Ford was there on a call from Wren.

Cohen's cross-examination focused on whether Ford could be certain that the guns were real and/or in working order considering that he did not actually handle the guns and whether it was likely that the guns belonged to an employee of Wren's identified as Tom.

At that point, the Goverment moved for the Court to take notice of Wren's conviction, sentencing and placement on probation, and then "conclude[d] the Government's presentation." Transcript, p. 145. The following exchange took place:

THE COURT: Well, I have not seen any conditions of probation up here yet.

MR. FAULKNER: Well, Your Honor, we've got copies of those.

THE COURT: Well, you do not think that is part of your case?

MR. FAULKNER: Yes, Your Honor, we'd better put those on.

MR. COHEN: I believe they've rested. Do they want to re-open now?

MR. FAULKNER: Well, Your Honor, the conditions are specified by local rule, in any event, the standard conditions. But, we could offer—we have the copy right here, and we would offer it.

THE COURT: Mr. Faulkner, how many times have you tried cases like this?

MR. FAULKNER: Many, Your Honor. In fact, I—

THE COURT: Well, is there any evidence that he even knows the first thing about a condition of probation?

MR. FAULKNER: Well, Your Honor, the conditions are right here. I neglected to do that, but I believe those are specified by local rule, Your Honor, and I don't think he has to be particularly notified not to commit other crimes. I don't think—

THE COURT: What does he sign there?

MR. FAULKNER: Your Honor, I have it right here, and I offer it to the Court at this time. May I call Mr. Williams [the Probation Officer] to identify it, Your Honor?

THE COURT: You do what you want to.

MR. COHEN: Judge, I'll agree that those are the conditions of probation. Transcript, pp. 145–46.

The Government then called Probation Officer Don Williams, who testified that he informed Wren of the terms and conditions of his probation and that Wren signed the conditions. Williams then read into the record the condition which prohibits the violation of any federal, state or local law.

Cohen did not challenge Williams about the probation terms and conditions, nor Wren's understanding thereof; rather, Cohen elicited from Williams testimony about the delay between the authorization for the issuance of a warrant for Wren's arrest and the actual arrest of Wren (approximately five weeks).

On that note, the evidence was concluded and the discussion turned back to the merits of the motion to dismiss based on prejudicial delay.

The Court then entered its findings, concluding that Wren participated in the burglary, participated in the extortion attempt and possessed firearms, all in violation of the terms of his probation. The Court also found that the Government did not intentionally delay petitioning for revocation; nor that Wren was materially prejudiced by the delay. After allowing counsel and Wren to make statements, the Court imposed consecutive four-year terms on each of the original two counts.

DISCUSSION

■ At the outset, the Court notes that this motion is limited to Wren's ineffectiveness claims. The issue of delay has been examined by the appellate court and is not before this Court. However, because ineffectiveness claims will not be entertained for the first time on appeal, collateral attack is the proper method to raise such claims. *United States v. Ungar*, 794 F.2d 640 (11th Cir.1986); *United States v. Lopez*, 728 F.2d 1359 (11th Cir.1984).

■ An ineffectiveness claim in the context of a probation revocation hearing presents some interesting and apparently novel issues. The two-step analysis of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the presumed prejudice cases of *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), *Culyer v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), were developed to effectuate the constitutional rights of the accused in a criminal trial. It can be argued that those cases are inappropriate for use in revocation proceedings which clearly are not "full-fledged criminal trials." *Morgan v. Wainwright*, 676 F.2d 476, 479 (11th Cir. 1982).

The United States Supreme Court has studiously "avoid[ed] the imposition of rigid requirements that would threaten the informal nature of probation revocation proceedings or interfere with exercise of discretion by the sentencing authority." *Black v. Romano*, 471 U.S. 606, 611, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985). Accordingly, the Court has ruled that there is no rigid requirement that the sentencing authority indicate that it considered alternatives to revocation; nor explain for the record why it made one choice (revocation) over another legitimate alternative. *Id.* Fifteen years ago, the Court ruled that there is no per se right to appointed counsel at state revocation proceedings, *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); and more recently, the Eleventh Circuit ruled that there is no right to a jury determination of contested factual matters in revocation proceedings. *Morgan, supra.*

In reaching those results, the courts reiterated that revocation proceedings serve different functions and thus have different requirements than criminal trials. Revocation hearings require evaluation of past conduct and determinations of future potential for rehabilitation. Determinations are ofter subjective and require familiarity with both the probation and incarceration systems, and the rules of evidence are generally relaxed.

At the same time, an indigent federal probationer has a statutory right to appointed counsel at probation revocation

hearings. 18 U.S.C. § 3006A(a)(1)(C). The provision would be meaningless if it did not embody a requirement that counsel be effective, as well as merely present. Thus, it appears to this Court that the rules laid down in *Strickland* provide the appropriate framework for evaluating Wren's claim; but the Court must review counsel's performance in light of the particular type of proceeding involved.

The fundamental inquiry in any ineffectiveness claim is whether the Court can state with confidence that a just result was reached in the challenged proceeding. *Strickland* provides that such inquiry is twofold. First, the defendant must establish that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense. *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064. The Court must give great deference to an attorney's choice of tactics and must "indulge a strong presumption" that his or her performance was *not* deficient. *Id.* at 689, 104 S.Ct. at 2065. After a showing of deficient performance, the defendant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

As Justice O'Connor points out, in certain circumstances, prejudice may be presumed. Prejudice will be presumed if there is actual or constructive denial of counsel altogether or if the Government interferes with counsel's assistance. *Id.* at 692, 104 S.Ct. at 2067 (*citing Cronic, supra*). Additionally, "a similar, though more limited, presumption [arises] when counsel is burdened by an actual conflict of interest." *Id.* (*citing Culyer, supra*). Finally, if the gravity of the charge and the circumstances surrounding a trial are so egregious that no member of the bar could be expected to fulfill the adversarial role, the *Strickland* analysis and the "inquiry into prejudice is not worth the cost." *Id.; see also Cronic, supra,* 466 U.S. at 658 & n. 24, 104 S.Ct. at 2046 & n. 24; *Powell, supra.*

(A) *Presumptions of Ineffectiveness*

▋ Wren seeks a presumption of prejudice because he and Cohen met face-to-face for the first time just prior to the hearing. Although the Court does not applaud Cohen's late substitution—particularly as a result of Puetz' desire to have his birthday uninterrupted—a presumption of prejudice is not warranted in this case.

Wren met previously with Cohen's associate, Puetz, and Cohen talked with Wren over the phone three days before the hearing. Admittedly, three days is a brief period, but there is no suggestion that Cohen was not aware of the assignment prior to that time. Further, it is evident from the transcript of the hearing that Cohen was fully aware of the charges and that his defense to those charges was as competent as can be expected in light of the Government's access to eyewitnesses to each of the charged probation violations. Cohen did what he could to impeach the individuals' testimony; but ultimately the result would, and did, turn on the judge's assessment of the witnesses' credibility. It is evident that the public defenders thought the best defense would be to seek to have the petition dismissed for delay. Against eyewitness testimony, their attempted defense of laches would have appeared to provide the best line of defense.

▋ Wren also alleges that:

Recently I learned from court records sent me, that CJA Davis Cohen had a conflict of interest during the time he was purportedly representing me, since he was negotiating on behalf of one of the two (2) witnesses against me who was in the federal witness protection plan.

Aff. ¶ 21.

Wren has not proffered any evidence of that allegation and Cohen denied representing Miller or Berry in an affidavit submitted by the Government. Because Wren must demonstrate that counsel "actively represented conflicting interests [and that] an actual conflict of interest adversely affected his lawyer's performance," *Cuyler, supra,* 466 U.S. at 348 & 350, 100 S.Ct. at

1718 & 1719, Wren's bare allegation is insufficient to warrant a presumption of prejudice.

(B) *Specific Instances of Deficient Performance*

 It appears that Wren also alleges deficient performance in Cohen's failure to object to Court's "assistance" given to the Government, as set out in the excerpt from the hearing at pp. 1240–41 *supra.* Wren misapprehends the nature of the proceeding. As stated, rigid adherence to the adversarial process is not required in revocation proceedings. Rather, the elements of a constitutionally valid hearing require that:

> The probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation.... The petitioner is also entitled to cross-examine adverse witnesses, unless the hearing body specifically finds

good cause for not allowing confrontation.

*Black v. Romano, supra,* 471 U.S. at 612, 105 S.Ct. at 2258.

The exchange between the Court and counsel did not undermine the neutrality of the factfinder, and an objection by counsel would not have been sustained. Consequently, Cohen's failure to object did not constitute deficient performance.

Finally, there is no evidence, offered by Wren or elsewhere in the record, supporting Wren's contention that the Court relied on uncounseled convictions when imposing the sentence.

CONCLUSION

Wren's contentions that he received ineffective assistance of counsel is unsupported by the circumstances or the record, nor has he shown any prejudice. A further evidentiary hearing is unnecessary and the motion by Wren to vacate his sentence pursuant to 28 U.S.C. § 2255 is DENIED.