The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Christopher SILVA, Defendant–Appellant.

No. 04CA0661.

Colorado Court of Appeals, Div. IV.

June 2, 2005.

Rehearing Denied July 7, 2005.*

Certiorari Granted April 17, 2006.**

* ROY, J., would Grant.

** Justice EID does not participate.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Christopher Silva, Defendant–Appellant, pro se.

WEBB, J.

Defendant, Christopher Silva, appeals the trial court order denying his second Crim. P. 35(c) motion for postconviction relief. We affirm in part and remand for further proceedings.

Defendant's conviction was affirmed on direct appeal, *People v. Silva*, (Colo.App. No. 98CA1061, Oct. 14, 1999) (not published pursuant to C.A.R. 35(f)), and the mandate issued on November 20, 2000. He then filed a Crim. P. 35(c) motion for postconviction relief alleging ineffective assistance of trial counsel. After appointing counsel and holding a hearing, the trial court denied defendant's motion, and a division of this court affirmed.

*People v. Silva,* (Colo.App. No. 02CA0977, May 8, 2003), 2003 WL 21029168 (not published pursuant to C.A.R. 35(f)).

In December 2003, defendant filed the present postconviction motion, in which he argued that: (1) his postconviction counsel rendered ineffective assistance and suffered from a conflict of interest; (2) on direct appeal his appellate counsel rendered ineffective assistance; (3) § 18–1.3–803(4)(b), C.R.S. 2004 (formerly § 16–13–103(4)(b)), was unconstitutional as applied to him because the trial court, not a jury, determined that he was a habitual criminal in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (4) his habitual criminal convictions were unconstitutional because the trial court did not advise him regarding his right to testify at those proceedings; and (5) his forty-eight-year sentence was unconstitutionally disproportionate.

The trial court summarily denied the motion "for the reasons given by the People in their Response," but without making its own findings of fact and conclusions of law.

### I.

Defendant first contends the court erred in adopting the People's position that his motion was untimely. We disagree, except as to his claims of ineffective assistance and conflict of interest concerning postconviction counsel.

Section 16–5–402(1), C.R.S.2004, provides that claims for postconviction relief in cases other than those involving class one felonies must be filed within three years of the date the conviction becomes final, unless the defendant can establish justifiable excuse or excusable neglect for the late filing. *See* § 16–5–402(2)(d), C.R.S.2004. Here, the mandate in defendant's direct appeal issued on November 20, 2000, the time limitation expired on November 20, 2003, and defendant filed the present motion on December 22, 2003.

■ Defendant argued that justifiable excuse or excusable neglect existed for the late filing only on the basis that he had "appealed the denial of his first application for postconviction relief, thus transferring jurisdiction to the Colorado Court of Appeals.

Hence [the postconviction court] was without jurisdiction to hear his second motion ... until jurisdiction returned to [the postconviction] court." We may affirm based on this argument even though the postconviction court did not specifically address it in its order. *See People v. Eppens,* 979 P.2d 14 (Colo.1999).

"[N]either the timely commencement of a collateral attack, nor the pendency of an appeal from the denial of Crim. P. 35(c) relief, tolls the limitation period with respect to later asserted postconviction claims." *People v. Clouse,* 74 P.3d 336, 339 (Colo.App. 2002) (citing *People v. Ambos,* 51 P.3d 1070, 1072 (Colo.App.2002)). Thus, defendant's assertion that he could not file a second motion until the first postconviction proceedings were concluded fails to establish justifiable excuse or excusable neglect.

■ Therefore, because the time bar in § 16–5–402(1) was not tolled during the litigation of defendant's first postconviction relief motion, his second motion was untimely as to all claims except those involving postconviction counsel's alleged ineffectiveness and conflict of interest.

### II.

Defendant next contends the trial court should have held a hearing on his claim of justifiable excuse or excusable neglect. We conclude that a remand for further proceedings is required, but only as to the conflict of interest claim.

In the present motion, defendant asserted that his postconviction counsel was ineffective by failing to call certain witnesses. Further, he asserted that postconviction counsel, a deputy public defender, had a conflict of interest because defendant had alleged ineffective assistance against another deputy public defender, now postconviction counsel's superior, who had briefly represented defendant before appointment of alternative defense counsel for the trial. On this basis, defendant argued justifiable excuse or excusable neglect.

### A.

In *People v. Hickey,* 914 P.2d 377 (Colo. App.1995), and later cases, several divisions of this court have held that a defendant has a right to raise ineffective assistance of prior postconviction counsel in a second Crim. P. 35(c) motion. *See, e.g., People v. Clouse, supra; People v. Fitzgerald,* 973 P.2d 708, 712 (Colo.App.1998).

Assuming, without deciding, that such a motion is proper, it is generally not considered successive to the defendant's first postconviction motion. *People v. Russell,* 36 P.3d 92 (Colo.App.2001). However, § 16–5–402(1) does not provide for additional time to complete postconviction proceedings, and postconviction proceedings will often exceed the limitations period as measured from the date of conviction. Hence, a facially untimely ineffective assistance of postconviction counsel claim should be evaluated for justifiable excuse or excusable neglect. This inquiry begins with the premise that such claims cannot be asserted before the first postconviction proceedings and any appeal have ended. *People v. Clouse, supra.*

Here, defendant's claims of ineffective assistance and conflict of interest against his postconviction counsel have not been evaluated for justifiable excuse or excusable neglect. In addition, the People's Response, relied on by the postconviction court in its ruling, neither directly addressed the merits of defendant's ineffective postconviction counsel claim nor contained proposed findings of fact and conclusions of law that could have been adopted by the trial court in denying defendant's Crim. P. 35(c) motion. *See People v. Breaman,* 939 P.2d 1348 (Colo.1997) (in all postconviction cases, regardless whether a hearing is required, the court shall decide the issues and make findings of fact and conclusions of law that sufficiently set forth the basis of the ruling).

Accordingly, we conclude that further proceedings are necessary to address justifiable excuse or excusable neglect.

### B.

Those further proceedings, however, need not address alleged ineffective assistance of postconviction counsel in failing to call witnesses at the Crim. P. 35(c) hearing. To the extent that *People v. Hickey, supra,* and its progeny suggest otherwise, we decline to follow those cases. *See In re Estate of Becker,* 32 P.3d 557 (Colo.App.2000) (one division of this court is not obligated to follow the precedent established by another division), *aff'd sub nom. In re Estate of DeWitt,* 54 P.3d 849 (Colo.2002).

"No Sixth Amendment right to counsel attaches for indigents seeking post-conviction relief." *Duran v. Price,* 868 P.2d 375, 379 (Colo.1994). Nor does such a right to counsel exist by virtue of Colo. Const. art. II, § 16. *People v. Duran,* 757 P.2d 1096 (Colo. App.1988). In *Brinklow v. Riveland,* 773 P.2d 517, 521 (Colo.1989), the court held that "due process does not demand" appointment of postconviction counsel.

The division in *Hickey, supra,* 914 P.2d at 378, concluded that a limited statutory right to counsel in postconviction proceedings is "tenuously premised" on §§ 21–1–103 and 21–1–104, C.R.S.2004. *Accord People v. Duran, supra; People v. Naranjo,* 738 P.2d 407 (Colo.App.1987). Observing that "the failure to provide effective assistance of counsel is tantamount to not providing counsel at all," *People v. Hickey, supra,* 914 P.2d at 379, the division relied on *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to conclude that ineffective assistance of prior postconviction counsel would entitle the defendant to another postconviction proceeding. We question the first conclusion and disagree with the second conclusion.

In both *Duran v. Price, supra,* and *Brinklow v. Riveland, supra,* the supreme court concluded that a district court may decline to appoint postconviction counsel when the asserted claim is wholly unfounded. Neither *Duran* nor *Brinklow* cited the broader holdings of *People v. Naranjo, supra,* and *People v. Duran, supra,* that a defendant enjoys a statutory right to postconviction counsel.

More recently, the supreme court reiterated that it "has not recognized a right to counsel with respect to Crim. P. 35(c) motions." *People v. Breaman, supra,* 939 P.2d at 1350. There, the court cited *People v.*

*Hickey, supra,* and *People v. Naranjo, supra,* as "but see." Later in the opinion, however, the court stated, "Breaman did not have a right to appointed counsel." *People v. Breaman, supra,* 939 P.2d at 1351.

Under § 21–1–104(2), one of the statutes relied on in *People v. Duran, supra,* and *People v. Hickey, supra,* once appointed, the public defender need not pursue postconviction remedies unless "there is arguable merit to the proceedings." Thus, appointed counsel "may inform the court that he or she believes the defendant's [postconviction] claims are without merit and request permission to withdraw without filing an *Anders* brief." *People v. Breaman, supra,* 939 P.2d at 1351, n. 2. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (constitutional right to counsel on direct appeal requires that, if an appellate attorney finds the case wholly frivolous, the attorney should so advise the court, request permission to withdraw, and file a brief referring to anything in the record arguably supporting the appeal).

This narrow view of the statutory right, if any, to postconviction counsel is consistent with the limited nature of postconviction proceedings. *See, e.g., Jurgevich v. Dist. Court,* 907 P.2d 565 (Colo.1995) (no right to free transcript in collateral attack); *People v. Goldman,* 923 P.2d 374 (Colo.App.1996) (declining to address allegations not raised in the Crim. P. 35(c) motion or hearing, although Crim. P. 52(b) would suggest otherwise as to plain error); *People v. Duran, supra,* 757 P.2d at 1097 ("Because defendant's right to counsel in this Crim. P. 35(c) proceeding is statutory and not constitutional, its waiver must be voluntary but need not be knowing and intelligent.").

■ *Strickland* presents a useful model for measuring counsel's performance, which parallels the test for legal malpractice liability. *Rantz v. Kaufman,* 109 P.3d 132 (Colo. 2005). However, it goes much further by mandating the remedy that, if counsel is shown to have been ineffective, the underlying proceeding must be repeated. We decline to extend this unique remedy beyond those proceedings in which the defendant enjoys either a constitutional or a comparably unqualified statutory right to appointed counsel. Indeed, doing so could cloud the finality of other proceedings in which the trial court may, but need not, appoint counsel. *See, e.g., People ex Rel. Yeager,* 93 P.3d 589 (Colo.App.2004) (noting court's broad discretion to attorney for incapacitated person in guardianship proceeding).

We begin our analysis with United States Supreme Court decisions rejecting ineffective assistance claims based on counsel's error in a discretionary appeal or on collateral attack, because an indigent defendant enjoys no right to appointed counsel in such proceedings. Some of these cases were decided after *People v. Duran, supra,* and *Duran v. Price, supra.* They are not discussed in *Hickey* or court of appeals cases that follow it.

In *Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)(per curiam), the prisoner asserted that he had been denied effective assistance when retained postconviction counsel failed to file a timely application for discretionary appellate review in state court, thereby foreclosing federal habeas corpus review. The Court responded, "[s]ince [the prisoner] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely." *Wainwright v. Torna, supra,* 455 U.S. at 587–88, 102 S.Ct. at 1301.

The Court also rejected relief on due process grounds. "[The prisoner] was not denied due process of law by the fact that counsel deprived him of his right to petition the Florida Supreme Court for review. Such deprivation—even if implicating a due process interest—was caused by his counsel, and not by the State." *Wainwright v. Torna, supra,* 455 U.S. at 588 n. 4, 102 S.Ct. at 1301 n. 4; *cf. Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct., 2437, 41 L.Ed.2d 341 (1974).

In *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), another procedural default case, the majority reiterated, "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of

counsel in such proceedings." *Coleman v. Thompson, supra,* 501 U.S. at 752, 111 S.Ct. at 2566 (citations omitted). Thus, because counsel could not be constitutionally ineffective, the majority concluded that the prisoner bore the risk of his attorney's error.

In so holding, the *Coleman* majority expressly rejected the prisoner's argument that "it is enough that a petitioner demonstrate that his attorney's conduct would meet the *Strickland* standard, even though no independent Sixth Amendment claim is possible." *Coleman v. Thompson, supra,* 501 U.S. at 753, 111 S.Ct. at 2566. The majority went on to explain that attorney ignorance or inadvertence did not excuse a procedural default "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson, supra,* 501 U.S. at 753, 111 S.Ct. at 2567 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).

The majority recognized that the prisoner would not bear the consequence of attorney error only in circumstances where "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," such as, "interference by officials [that] made compliance impracticable." *Coleman v. Thompson, supra,* 501 U.S. at 753, 111 S.Ct. at 2566 (quoting *Murray v. Carrier, supra,* 477 U.S. at 488, 106 S.Ct. at 2647–48).

In *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), the Supreme Court held that postconviction counsel need not comply with the requirements of *Anders.* "Since respondent has no underlying constitutional right to appointed counsel in state postconviction proceedings, she has no constitutional right to insist on the *Anders* procedures which were designed solely to protect that underlying constitutional right." *Pennsylvania v. Finley, supra,* 481 U.S. at 557, 107 S.Ct. at 1994. The same could be said of adopting the *Strickland* remedy in Crim. P. 35(c) proceedings.

The *Finley* majority explained that, "[i]n this context, the Constitution does not put the State to the difficult choice between affording no counsel whatsoever [in postconviction proceedings] or following the strict procedural guidelines enunciated in *Anders.*" *Pennsylvania v. Finley, supra,* 481 U.S. at 559, 107 S.Ct. at 1995. This observation, too, could be applied to adopting the *Strickland* remedy in Crim. P. 35(c) proceedings. Indeed, the spectre of "postconviction proceedings ad infinitum," *People v. Clouse, supra,* 74 P.3d at 341, could dissuade trial courts from ever appointing postconviction counsel.

1.

Former Crim. P. 35(c)(2)(I) contemplates relief for both constitutional and statutory violations. *See, e.g., People v. Alderman,* 720 P.2d 1000 (Colo.App.1986).

■ Here, defendant argues only that ineffectiveness of postconviction counsel violated his constitutional rights. However, a defendant enjoys no constitutional right to effective assistance of postconviction counsel. *Duran v. Price, supra; see State v. Krum,* 183 Ariz. 288, 903 P.2d 596 (1995)(because postconviction proceedings generally provide a remedy for constitutional errors, the absence of any federal constitutional right to effective counsel in a postconviction proceeding precluded use of the state's postconviction proceeding rule to remedy alleged ineffective assistance of postconviction counsel).

■ The ineffectiveness of appointed postconviction counsel does not constitute a statutory violation because a defendant enjoys no statutory right to such counsel. *People v. Breaman, supra.*

■ A claim that postconviction counsel was ineffective also does not fit within the specific grounds for relief set forth in Crim. P. 35(c)(2)(II), (III), (V), or (VII). While the language of Crim. P. 35(c)(2)(VI) is broader, ("any grounds otherwise properly the basis for collateral attack upon a criminal judgment"), it too is inapplicable because such a claim challenges the order in the prior postconviction proceeding, not the underlying judgment of conviction. *Cf. People v. Smith,* 971 P.2d 1056 (Colo.1999)(criminal judgment of conviction); *State Farm Fire & Cas. Co. v.*

*Mason,* 697 P.2d 793 (Colo.App.1984) (criminal judgment of acquittal).

■ Hence, we conclude that procedurally a second Crim. P. 35(c) motion cannot be used to raise mere ineffective assistance of counsel in a prior Crim. P. 35(c) proceeding.

### 2.

■ Further, even if a claim that postconviction counsel had been ineffective were procedurally proper in a second Crim. P. 35(c) proceeding, the limited statutory right, if any, to appointed postconviction counsel in Crim. P. 35(c) proceedings affords no reason to depart from the *Coleman* holding that, "[i]n the absence of a constitutional violation, the petitioner bears the risk ... for all attorney errors made in the course of the representation," which rests on "well-settled principles of agency law." *Coleman v. Thompson, supra,* 501 U.S. at 754, 111 S.Ct. at 2567.

The procedural default analysis in *Coleman* "is grounded in concerns of comity and federalism." *Coleman v. Thompson, supra,* 501 U.S. at 730, 111 S.Ct. at 2554. Nevertheless, both federal habeas and Crim. P. 35(c) proceedings recognize the importance of finality. *Compare Coleman v. Thompson, supra,* 501 U.S. at 748, 111 S.Ct. at 2563 ("the cost to finality in criminal litigation that federal collateral review of state convictions entails"), *with People v. Wiedemer,* 852 P.2d 424, 434 (Colo.1993)("the State has a legitimate interest in preserving the finality of criminal convictions"). The division in *People v. Clouse, supra,* acknowledged the lack of finality that will result from recognizing ineffective assistance of postconviction counsel claims.

In *People v. Dunlap,* 124 P.3d 780, 2004 WL 2002439 (Colo.App. No. 01CA1082, Sept. 9, 2004)(citing *Wainwright v. Torna, supra,* and *Ross v. Moffitt, supra* ), a division of this court discerned no basis for relief, despite the trial court's finding that appellate counsel was ineffective by failing to petition the United States Supreme Court for certiorari. The division did not adopt the trial court's *Strickland* analysis, but instead explained, "a criminal defendant does not have a constitutional right to counsel to pursue applications for review in the United States Supreme Court. Thus, a defendant cannot be deprived of the effective assistance of counsel by retained counsel's failure to file the application timely."

The Supreme Court applied the same analysis although postconviction counsel was retained in *Wainwright v. Torna, supra,* and appointed in *Pennsylvania v. Finley, supra,* and *Murray v. Carrier, supra.* However, because *Hickey* adopted the *Strickland* remedy based on a limited statutory right to appointed postconviction counsel, it could lead to the anomaly of the *Strickland* remedy not being available in a case of ineffective assistance by retained postconviction counsel. *See Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)(The same standards apply to court-appointed and retained counsel).

As the dissent acknowledges, citing *State v. Hunter,* 840 S.W.2d 850 (Mo.1992), the majority of state courts addressing this issue have declined to recognize a cognizable claim for ineffective assistance of postconviction counsel. *See also State v. Krum, supra; State v. Hunt,* 262 Neb. 648, 634 N.W.2d 475 (2001); *Bejarano v. Warden,* 112 Nev. 1466, 929 P.2d 922 (1996); *State v. Scudder,* 131 Ohio App.3d 470, 722 N.E.2d 1054 (1998).

With the exception of *Johnson v. State,* 681 N.W.2d 769 (N.D.2004), the out-of-state cases cited in the dissent that adopt *Strickland* all arose under statutes that expressly mandate appointment of postconviction counsel. *See Lozada v. Warden,* 223 Conn. 834, 613 A.2d 818, 821 (1992)("General Statutes § 51–296 ... provides for the appointment of counsel for an indigent person 'in any habeas corpus proceeding arising from a criminal matter ....' "); *Stovall v. State,* 144 Md.App. 711, 800 A.2d 31, 37 (2002)("Legal representation shall be provided indigent defendants in ... (3) Postconviction proceedings ...," quoting § 645A, Article 27, Annotated Code of Maryland); *Jackson v. Weber,* 637 N.W.2d 19, 22 (S.D.2001)("It is beyond dispute that our legislature has required that counsel be appointed for indigent persons in habeas proceedings," citing SDCL § 21–27–4).

In contrast, under Colorado law, "the district court [has] the discretion to appoint [postconviction] counsel." *People v. Breaman, supra,* 939 P.2d at 1351. Thus, because Colorado law stops short of the express statutory right at issue in *Lozada, Stovall,* and *Jackson,* these cases do not persuade us to adopt *Strickland. Compare Bejarano v. Warden, supra,* 929 P.2d 922 at 926 ("[W]e do not recognize an independent right to effective assistance of counsel during postconviction proceedings, unless that counsel was mandatorily appointed pursuant to statute.") *with McKague v. Whitley,* 112 Nev. 159, 165 n. 5, 912 P.2d 255, 258 n. 5 (1996)(noting that, because statute mandates appointment of counsel in the first postconviction proceeding when a petitioner is under sentence of death, "[i]t is axiomatic that the right to counsel includes the concomitant right to effective assistance of counsel." [Internal citation omitted] ).

*Coleman, Torna,* and *Finley* do not prohibit a state from applying the *Strickland* remedy to claims of ineffective assistance of postconviction counsel appointed as a matter of discretion, not of right. However, the absence of a constitutional right to postconviction counsel, the very limited statutory right, if any, to postconviction counsel under Colorado law, and the lack of any remedy in §§ 21–1–103(1) and 21–1–104, dissuade us from adopting the unique *Strickland* remedy to redress ineffective assistance of postconviction counsel. *See Silverview at Overlook, LLC v. Overlook at Mt. Crested Butte Ltd. Liab. Co.,* 97 P.3d 252, 257 (Colo.App. 2004)("If the General Assembly has not authorized a particular remedy in a statute, we cannot furnish one.").

Moreover, affording a defendant another postconviction proceeding, because ineffective assistance of prior postconviction counsel can be the equivalent of no counsel at all, disregards the ability of the postconviction court independently to reach the correct result based on the materials before it. The *Finley* majority stated that, in postconviction review, "the defendant's access to the trial record and the appellate briefs and opinions provided sufficient tools for the *pro se* litigant to gain meaningful access to courts."

*Pennsylvania v. Finley, supra,* 481 U.S. at 557, 107 S.Ct. at 1994; *cf. Ross v. Moffitt, supra,* 417 U.S. at 615, 94 S.Ct. at 2446 (similarly noting the availability to the pro se defendant seeking discretionary appellate review of a trial transcript, a brief to the state's intermediate appellate court, and in most cases an opinion from that court, and concluding, "We do not believe it can be said, therefore, that a defendant in respondent's circumstances is denied meaningful access to the North Carolina Supreme Court because the State does not appoint counsel to aid him in seeking [discretionary] review in that court.").

■ The principle that the General Assembly's amendment and reenactment of a statute, without changing the provision previously construed, is presumed to ratify the prior judicial construction, *see, e.g., People v. Swain,* 959 P.2d 426 (Colo.1998), does not persuade us that the General Assembly has implicitly endorsed *Hickey's* adoption of *Strickland,* for two reasons.

First, the *Hickey* division did not adopt *Strickland* based on statutory interpretation. Second, of the two statutes cited in *Hickey* and *Naranjo,* § 21–1–103 deals generally with representation of indigent persons, while § 21–1–104 establishes particular duties of the Public Defender. Since *Hickey* was decided, § 21–1–103 has been amended, but § 21–1–104 has not.

Accordingly, further proceedings need not address defendant's ineffective assistance claims, other than the alleged conflict of interest, because those claims are neither constitutional nor derived from an express statutory mandate comparable to the constitutional guarantee of effective assistance of counsel at trial and on direct appeal.

### C.

■ Nevertheless, the supreme court's analysis in *People v. Breaman, supra,* suggests a need for further proceedings on defendant's conflict of interest claim because, on the particular facts presented and under the analysis in *Coleman v. Thompson, supra,* it could implicate a constitutional interest beyond counsel's mere ineffectiveness.

In *Breaman,* the supreme court explained the trial court had erred by instructing appointed counsel to report to the court concerning the merits of the claim for postconviction relief, because the attorney "was to represent Breaman, not to serve as the court's fact-finder." *People v. Breaman, supra,* 939 P.2d at 1352. *Breaman* invoked the principles that "An attorney appointed to represent a criminal defendant must not have a conflict of interest, [citation omitted], and must provide the client with professionally competent assistance [citation omitted]." *People v. Breaman, supra,* 939 P.2d at 1351. However, the court did not remand for proceedings on ineffective assistance, but for the trial court "to determine whether an evidentiary hearing was necessary or whether the motion could be decided on the existing record alone." *People v. Breaman, supra,* 939 P.2d at 1352.

Here, the trial court appointed postconviction counsel from the Public Defender's Office rather than appointing alternative defense counsel. However, defendant asserted that a deputy public defender, who now held a supervisory position in that office, had provided him with ineffective pretrial representation. Hence, if the court knew of defendant's assertion when it appointed counsel, the appointment could constitute a "factor external to the defense" impeding counsel's efforts, akin to "interference by officials," *Coleman v. Thompson, supra,* 501 U.S. at 753, 111 S.Ct. at 2566, because such conflicted counsel might, at least in theory, sabotage defendant's case to protect counsel's employment. Thus, even under the Supreme Court's very limited view of ineffective assistance of postconviction counsel claims, we discern a separate constitutional due process interest in protection against possible official interference with a defendant's exercise of postconviction remedies.

Although defendant raised the conflict of interest issue at the conclusion of the hearing held on his first Crim. P. 35(c) motion, the court did not specifically rule on defendant's assertion.

Defendant raised the conflict claim again in the present motion. The People's Response states only that defendant was represented at pertinent times by alternative defense counsel, not the public defender. However, defendant argued that his initial deputy public defender had given documents to the prosecution that were later used to his detriment at trial. Thus, the conflict of interest claim has not been adequately evaluated, and a ruling on it setting forth findings and conclusions has not been made.

Accordingly, we conclude that further proceedings should be limited to defendant's claim that the trial court knew or should have known that it was appointing postconviction counsel who suffered from an actual conflict of interest. On remand, the postconviction court should first determine whether justifiable excuse or excusable neglect exists for the untimely filing of this claim; if so, it should determine whether a separate hearing is required on the merits of this allegation. If the court determines, either with or without a hearing, that postconviction counsel's actual conflict was apparent at the time of his appointment, then defendant shall be afforded another Crim. P. 35(c) proceeding. *Cf. People v. Castro,* 657 P.2d 932 (Colo.1983). In either event, the court should make findings of fact and conclusions of law in its ruling.

The order is affirmed except as to the conflict of interest claim, and the case is remanded for further proceedings on that claim consistent with this opinion.

Judge GRAHAM concurs.

Judge ROY concurs in part and dissents in part.

Judge ROY concurring in part and dissenting in part.

I dissent from the majority's conclusion that a claim for ineffective assistance of counsel is not cognizable because there is no constitutional right to postconviction counsel and its further conclusion that *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is not the applicable standard for determining ineffective assistance of statutory postconviction counsel. While I see some inconsistency in the majority's approach, I concur that the matter should be remanded on the issue of whether

defendant's postconviction counsel had a conflict of interest.

In this second motion for postconviction relief, defendant, pro se, for the first time alleges ineffective assistance of appellate counsel and postconviction counsel. In his first motion for postconviction relief he alleged, among other things, ineffective assistance of trial counsel.

The majority holds that a claim of ineffective assistance of postconviction counsel is not cognizable because defendants have no constitutional right to postconviction counsel. In doing so, the majority declines to follow *People v. Hickey*, 914 P.2d 377 (Colo.App. 1995). I authored *Hickey*. I dissent not from pride of authorship but because I remain confident that the opinion is correct in recognizing a limited statutory right of counsel in postconviction proceedings and establishing *Strickland v. Washington, supra*, as the appropriate standard for evaluating the effectiveness of postconviction counsel. For reasons that are not altogether clear, while concluding that a claim of ineffective assistance of postconviction counsel is not cognizable, the majority nonetheless concludes that a right to conflict-free postconviction counsel is cognizable and remands for further proceedings on that claim.

At the outset, the majority relies on a number of United States Supreme Court opinions for the proposition that there is no constitutional right to postconviction counsel. *See Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)(per curium); *Duran v. Price*, 868 P.2d 375 (Colo.1994); *Brinklow v. Riveland*, 773 P.2d 517 (Colo.1989); *People v. Hickey, supra*; *People v. Duran*, 757 P.2d 1096 (Colo. App.1988).

These cases, with the exception of *People v. Duran*, and *People v. Hickey*, do not address a statutory right to postconviction counsel. *Hickey* turned on a statutory right.

The right to effective assistance of counsel at the trial and appellate levels is guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 16 of the Colorado Constitution, and the test announced in *Strickland v. Washington, supra*, applies to both. *See People v. Valdez*, 789 P.2d 406 (Colo.1990). The Sixth Amendment right to counsel is a fundamental right. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Our supreme court has expressed a preference that claims of ineffective assistance of trial and appellate counsel be vindicated in postconviction proceedings. *See People v. Thomas*, 867 P.2d 880 (Colo.1994).

Therefore, challenges to the effectiveness of trial and appellate counsel will, for the most part, be raised in postconviction proceedings. As framed, the majority appears to accept the proposition that defendant is not entitled to effective assistance of counsel in vindicating his fundamental rights to effective assistance of trial and appellate counsel. In my view, there is no right without a practical remedy. Denying the right to effective assistance of postconviction counsel after counsel is appointed renders the right to effective assistance of trial and appellate counsel theoretical at best and ethereal at worst.

At the outset, I note that the division in *Hickey* was not the first division to recognize a statutory right to postconviction counsel. *See People v. Duran, supra*. *Hickey* was the first case to posit that the right to counsel in postconviction proceedings was "tenuously premised" on the state public defender statute. Sections 21–1–103(1)(b), (2); 21–1–104(1)(a), (b), C.R.S.2004. The tenuous nature of the right is premised on the language of the statute; the fact that a statute can be easily amended or repealed; and the fact that a defendant must file a motion, typically pro se, which has arguable merit before any right to appointed counsel arises.

As to the statutory language, the division said in *People v. Duran*:

However, a limited statutory right to counsel exists in such [postconviction] proceedings. *See* §§ 21–1–103(1) and 21–1–104, C.R.S. (1986 Repl.Vol. 8B); *People v. Naranjo, supra*. Section 21–1–103(1) provides that the state public defender shall represent indigent defendants who either re-

quest or, on a court's order therefore, do not reject such representation. Section 21–1–104(1)(b) further provides that the public defender shall "prosecute any ... remedies ... after conviction that he considers to be in the interest of justice." However, under § 21–1–104(2), the public defender is not required to pursue such remedies unless he is "satisfied first that there is arguable merit to the proceeding." *People v. Duran, supra,* 757 P.2d at 1097.

The fact that a statute can be amended or repealed requires no discussion or authority. As to the last factor, prior to the appointment of postconviction counsel, a generally undereducated and untrained defendant with limited access to the record and a law library must prepare and timely file a postconviction motion with specific allegations of ineffective assistance of counsel, or other error of constitutional dimension, and must further demonstrate that he or she was prejudiced. This is not easily or frequently accomplished. Therefore, while a lot of motions without merit are filed, it is highly likely that valid claims are not adequately or fully articulated or addressed.

With respect to the standard for evaluating ineffective assistance of postconviction counsel, the majority questions whether providing ineffective assistance of counsel is tantamount to not providing counsel and disagrees that *Strickland v. Washington, supra,* should be the standard for evaluating whether a defendant has been afforded effective assistance of counsel. The majority implies that constitutional rights and statutory rights cannot, or should not, have the same standard. I do not agree.

Many standards for evaluating ineffective assistance of counsel have been formulated over the years. *Dyer v. Crisp,* 613 F.2d 275 (10th Cir.1980) and *Romero v. United States,* 459 U.S. 926, 103 S.Ct. 236, 74 L.Ed.2d 187 (1982)(White, J., dissenting from denial of certiorari) outline the history of the federal standard for evaluating ineffective assistance of counsel and I borrow from the former unabashedly.

One pre-*Strickland* formulation, first announced in *United States v. Wight,* 176 F.2d 376 (2d Cir.1949), became known as the "farce and mockery," "sham and mockery," or "sham, farce and mockery" test. It stated: "A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." *United States v. Wight, supra,* 176 F.2d at 379. The Tenth Circuit articulated this standard as follows:

This circuit adheres to the well established principle that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation.

*Dyer v. Crisp, supra,* 613 F.2d at 276.

Prior to *Strickland v. Washington, supra,* Colorado employed the "farce and mockery" standard articulated as, "[t]he record does not disclose any flagrant shortcomings of the trial attorney from which we could conclude he was guilty of palpable malfeasance, or that the representation received at trial was so inadequate as to constitute a farce, mockery or sham." *Martinez v. People,* 173 Colo. 515, 519–20, 480 P.2d 843, 845 (1971); *see also People v. Pesis,* 189 Colo. 52, 536 P.2d 824 (1975).

Several circuits, including the Tenth Circuit, abandoned the "sham, farce and mockery" test, and adopted the "reasonable competence" test which had a variety of formulations. "[A] defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." *United States v. DeCoster,* 487 F.2d 1197, 1202 (D.C.Cir.1973). The quality of a defense counsel's representation should be within the range of competence which normally prevails at the time and place. *Moore v. United States,* 432 F.2d 730 (3d Cir.1970). "The Sixth Amendment demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp, supra,* 613 F.2d at 278.

These varying formulations and standards remained in place until the Supreme Court announced *Strickland v. Washington, supra.* The *Strickland* formulation is:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington, supra,* 466 U.S. at 687, 104 S.Ct. at 2064. Viewed in light of the "reasonably competent" standard, *Strickland* was not all that revolutionary.

With respect to postconviction counsel, the history is considerably shorter. In *Hickey,* the People urged the Indiana formulation for ineffective assistance of postconviction counsel as announced in *Baum v. State,* 533 N.E.2d 1200 (Ind.1989). That test is formulated as: "[I]f counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standard set forth in [*Strickland*]." *Baum v. State, supra,* 533 N.E.2d at 1201. In *Graves v. State,* 823 N.E.2d 1193 (Ind.2005), the court characterized this standard as having been met if counsel did not abandon the defendant. With all due respect to the Indiana Supreme Court, I will refer to this as the "sentient counsel test," "sentient" in this context meaning "capable of sensation and of at least rudimentary consciousness." *Webster's Third New International Dictionary* 2069 (2002).

Missouri has concluded, as has the majority, that there is no cognizable claim for ineffective assistance of postconviction counsel. *State v. Hunter,* 840 S.W.2d 850 (Mo.1992).

However, a small but growing number of states have adopted the *Strickland* formulation. In *Johnson v. State,* 681 N.W.2d 769 (N.D.2004), the court, citing *Hickey,* held that *Strickland v. Washington, supra,* was the standard for reviewing ineffective assistance of appointed postconviction counsel. The court quoted from *Lozada v. Warden,* 223 Conn. 834, 838–839, 613 A.2d 818, 821–22 (1992), wherein it was stated:

> The right to effective assistance of counsel is predicated on the statutory right to habeas counsel pursuant to [statute] which provides for the appointment of counsel for an indigent person "in any habeas corpus proceeding arising from a criminal matter...." It would be absurd to have the right to appointed counsel who is not required to be competent. "[C]ounsel should be appointed in post conviction matters.... When counsel is so appointed he must be effective and competent. Otherwise, the appointment is a useless formality." *Cullins v. Crouse,* 348 F.2d 887, 889 (10th Cir.1965); *see United States v. Wren,* 682 F.Supp. 1237, 1241–42 (S.D.Ga. 1988)(an indigent federal probationer's statutory right to appointed counsel at a probation revocation hearing under 18 U.S.C. § 3006A(a)(1)(c) "would be meaningless if it did not embody a requirement that counsel be effective as well as merely present"). Indeed, [the statute] would become an empty shell if it did not embrace the right to have the assistance of a competent attorney.

In *Stovall v. State,* 144 Md.App. 711, 800 A.2d 31 (2002), as in Colorado, the defendant's right to appointed counsel derived from the public defender statute. The court held that that right was broader than the right to counsel guaranteed by the United States Constitution, and the standard for reviewing effective assistance of postconviction counsel was *Strickland v. Washington, supra.* The court stated that it would not presume that the legislature mandated a "useless formality" by merely requiring the

presence of counsel as opposed to effective and competent counsel. *Stovall v. State, supra,* 144 Md.App. at 723, 800 A.2d at 38; *see also Jackson v. Weber,* 637 N.W.2d 19 (S.D.2001)("Counsel" mandated by statute to be appointed to indigent prisoners in habeas corpus proceedings implicitly means competent counsel, which may be determined under *Strickland's* effective assistance of counsel test).

So why the *Strickland* test? There are, in my view, at least three reasons:

• The *Strickland* test is an objective test which is not the case with the "sham, farce, and mockery" test.

• The *Strickland* test, while difficult to meet, is reasonably attainable, which cannot be said for the "sham, farce, and mockery" test, the "sentient counsel" test, or the "not cognizable" position of the majority. Therefore, it is possible under *Strickland* to vindicate fundamental constitutional rights with the assistance of reasonably competent counsel.

• There is a large and rapidly growing body of case law construing and applying *Strickland* which can, and will, permit a uniform application of the standard. I am confident that that body of case law will continue to grow in the foreseeable future.

Both the majority and I take some comfort from *People v. Breaman,* 939 P.2d 1348 (Colo.1997). In that case, the trial court appointed postconviction counsel to "review [Breaman's] submissions, consult with [Breaman] and make further investigations as may be appropriate to determine if a meritorious issue exists." *People v. Breaman, supra,* 939 P.2d at 1350. Appointed postconviction counsel reported back, stating that the defendant's claims were without merit. The supreme court reversed, concluding that the appointment of postconviction counsel was improperly limited, as the purpose of appointed counsel was to represent the defendant, not to serve as the trial court's factfinder. In the role of postconviction counsel, the court observed: "[a]n attorney appointed to represent a criminal defendant must not have a conflict of interest, *see Murphy v. People,* 863 P.2d at 304, and must provide the client with professionally competent assis-

tance, *see Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984)." *People v. Breaman, supra,* 939 P.2d at 1351.

I recognize the need for finality. Indiana has finality with the "sentient counsel" test. Missouri and the majority have found finality by not recognizing any right to effective assistance of postconviction counsel.

I am aware that the dockets of the trial courts and this court are cluttered, but not clogged, with motions for postconviction relief alleging ineffective assistance of trial and appellate counsel, and, as here, ineffective assistance of postconviction counsel. I am also aware that in that clutter there are motions with merit. I am further aware that in resolving many of these motions the courts must frequently review the merits of the underlying claims which trial counsel failed to preserve; or appellate or postconviction counsel failed to raise on appeal or in postconviction proceedings. Therefore, under the cloak of a claim of ineffective assistance of counsel, a defendant can seek seemingly endless review of real and imagined errors arising in the trial court. In part, this seemingly endless review is the consequence of reading, taking seriously, and enforcing our constitutions, which is one of the many costs of a free and ordered society.

It seems to me that *Strickland v. Washington, supra,* strikes an appropriate balance between finality and the vindication of important, if not fundamental, rights. The majority does not, in my view, strike an appropriate balance. Therefore, I cannot bring myself to agree.

Finally, while I do not intend to analyze the issue extensively, I have always viewed a defendant's right to conflict-free counsel as a subset of his or her right to effective assistance of counsel, not an independent right. *See People v. Cross,* 114 P.3d 1, 2004 WL 439361 (Colo.App. No. 02CA0151, Mar. 11, 2004) ("A criminal defendant has a constitutional right to the assistance of counsel, which includes the right to conflict-free counsel").

As our supreme court said in *Armstrong v. People,* 701 P.2d 17, 19, 24 (Colo.1985):

An accused in a criminal prosecution is guaranteed the right to effective assistance of counsel by the United States and Colorado Constitutions. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. This right is fundamental to the concept of a fair trial in our adversary system. *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). It serves both to protect the innocent from an unjust conviction and to maintain the integrity of the process by which society condemns a wrongdoer. *See People v. Germany,* 674 P.2d 345 (Colo.1983).

The constitutional right to effective assistance of counsel may be violated when the accused is represented by counsel who simultaneously represents competing interests. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *People v. Castro,* 657 P.2d 932 (Colo.1983). Although joint representation does not per se violate the right to effective assistance of counsel, *Holloway,* 435 U.S. at 482, 98 S.Ct. at 1177, and although a defendant may waive the right to conflict-free representation if such waiver is made voluntarily and with full knowledge of the actual conflict, it is recognized that representation by one attorney of two or more defendants in prosecutions arising from a single criminal episode invariably creates the possibility that a conflict of interest will arise. *Cuyler,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333.

. . . .

As we have indicated, in cases in which the issue of the fundamental constitutional right to effective assistance of counsel arises from the fact of joint representation, when an accused demonstrates that an actual conflict of interest was present at trial and that the conflict adversely affected the representation provided by defense counsel, no further demonstration of prejudice is required to satisfy the "plain error" standard. *Cuyler,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333; *Castro,* 657 P.2d 932. In such cases the prejudice is all

pervasive, commencing with initial tactical and strategic decisions and continuing through preparation of what should be included in new trial motions. The Court of Appeals erred in suggesting that once a real conflict of interest is established, a defendant asserting ineffective assistance of counsel because of joint representation must not only demonstrate an adverse effect on defense counsel's representation, but must also prove that such conduct affected the jury's decision.

Following the majority's line of reasoning, with which I disagree, if there is no cognizable claim for ineffective assistance of postconviction counsel, what difference does it make that postconviction counsel suffered under a conflict of interest?

Therefore, I would remand for further proceedings on both of defendant's claims or resolve the first and remand the second.