# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville April 23, 2014

## STATE OF TENNESSEE v. HARLEY UPCHURCH

**Appeal from the Criminal Court for Overton County**
**Nos. 2011-CR-59, 2012-CR-148     David A. Patterson, Judge**

**No. M2013-01508-CCA-R3-CD - Filed May 30, 2014**

The defendant, Harley Upchurch, appeals the trial court's revocation of his probation and reinstatement of his sentence of three years and six months in the Department of Correction. On appeal, he argues that the trial court erred in revoking his probation. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROGER A. PAGE, JJ., joined.

Josh Hoeppner, Livingston, Tennessee, for the appellant, Harley Upchurch.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Randall A. York, District Attorney General; and Owen G. Burnett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In Case No. 2011-CR-59, the defendant pled guilty on August 16, 2011, to setting fire to personal property, a Class E felony, and was sentenced as a Range II, multiple offender to three years and six months, suspended to probation. In Case No. 2012-CR-148, the defendant pled nolo contendere on January 18, 2013, to simple possession of morphine, a Schedule II controlled substance, a Class A misdemeanor, and was sentenced to eleven months, twenty-nine days, suspended to probation, to be served concurrently with Case No. 2011-CR-59. Probation violation warrants were issued based on the defendant's January 23, 2013 arrest for vandalism, his being intoxicated at the time of the arrest, and his display of

threatening behavior by shattering the windshield of a van belonging to Carol Sutton. Subsequent amendments to the warrants included additional violations based on the defendant's making alcohol in his jail cell and on his threatening behavior toward three correctional officers and assault of a fourth correctional officer at the Overton County Jail.

At the May 13, 2013 revocation hearing, Erin Bullard, the defendant's probation officer, testified that the defendant began serving his probated sentence on August 16, 2011, and she began supervising him in April 2012. She said that the defendant had been in jail for probation violations for the majority of the time he had been under her supervision. Ms. Bullard said that the defendant was arrested for vandalism on January 23, 2013, for shattering the windshield of Carol Sutton's van. The defendant was intoxicated at the time of his arrest and was belligerent with Overton County Jail staff. On January 28, 2013, the defendant assaulted Sergeant Dustin Gingerich while incarcerated at the Overton County Jail. On March 16, 2013, the defendant was found making alcohol in his jail cell and threatened two correctional officers that "they would get what was coming to them and he would see to it." The defendant also threatened "to rip [a third correctional officer's] head off and came to [the officer] with a closed fist." The defendant sent Ms. Bullard a letter stating he was innocent of the charges.

Sergeant Dustin Gingerich of the Overton County Sheriff's Department testified that on January 28, 2013, he went to the jail cell where the defendant was housed in response to a report of disorderly conduct. He observed a spilled cup of milk on the floor of the cell, opened the door, and instructed the defendant to step outside the cell. Sergeant Gingerich then asked the defendant to turn around and place his hands on the wall "because he had already shown aggressive behavior." The defendant, using profanity, responded that he was not going anywhere. Sergeant Gingerich turned his head to make sure the cell door was secure and then "felt a pain on the back of [his] head." He was dazed for a short period of time and then saw Corporal Burton struggling with the defendant. Blood began pouring out of Sergeant Gingerich's nose onto the floor. He assisted Corporal Burton, and they were able to handcuff the defendant.

Sergeant Gingerich said that he was taken to Livingston Regional Hospital and then transported by ambulance to Vanderbilt Medical Center for treatment of his injuries. He identified photographs depicting his injuries that were taken at Livingston Regional Hospital immediately after the assault, as well as photographs taken after his release from Vanderbilt. Sergeant Gingerich described the extent of his injuries and the medical treatment he received:

> I had a titanium plate put in the side of my face. Upon my return to Vanderbilt Medical University, they determined that I did need[] surgery and they replaced . . . several of the bones that had broken along my orbital floor

back into place and then . . . I had what was called a maxillary arch fracture and they placed a titanium plate on the outside of my cheek bone.

He said that he still experiences pain and swelling from his injuries.

Correctional Officer Ethan Bean of the Overton County Sheriff's Department testified that on March 16, 2013, he performed a search of the cell where the defendant was housed and found two bottles containing ingredients used to make alcohol. He told the defendant that he was going to "deboard" him, which meant a disciplinary board would decide if the defendant should lose behavior credits. The defendant began screaming at Officer Bean that he "would tear [the officer's] head off, that the good Lord told him to make that. And it was legal for him to do it in the jail." Officer Bean repeatedly asked the defendant to sit down, but he refused to comply. As a result of the defendant's continuing to disobey orders, Officer Bean sprayed the defendant with mace. Officer Bean said that the defendant was combative throughout the incident and was in a "fighting stance" when he sprayed him.

Patrol Sergeant/Squad Commander Robert Garrett of the Overton County Sheriff's Department testified that he responded to the vandalism call regarding the broken windshield of Carol Sutton's van. The defendant had asked Ms. Sutton to take him to get more alcohol, but she refused. The defendant became angry and smashed the windshield of her van with his fist. Inside the residence, Sergeant Garrett observed what appeared to be pieces of skin, along with blood drippings, on a bed. Other persons present at the residence corroborated Ms. Sutton's statement. The defendant was not at the scene when Sergeant Garrett arrived, but he located the defendant later that evening at the defendant's brother's residence. The defendant was "passed out on the couch with a quart of beer between his legs." He described the defendant as "[e]xtremely intoxicated" and said that when officers awakened him, he was "disoriented, staggering about on his feet," and smelled strongly of alcohol. Sergeant Garrett arrested the defendant and noticed numerous scrapes and abrasions on his hands. Sergeant Garrett attempted to serve the defendant with bond conditions paperwork ordering him to stay away from Ms. Sutton, but the defendant responded that he did not "give an F," that he would not follow the orders, and that the judge was "full of S."

The State recalled Erin Bullard who testified that she received a handwritten letter from the defendant dated April 23, 2013, in which he said, "[A]ll I did was put some peaches in a twenty ounce bottle cause I was bored." The defendant said he did not know that doing so was illegal.

The defendant testified that he was acquainted with Ms. Sutton because she and his brother had been dating for about two years. He admitted breaking the windshield of her van and being intoxicated at the time. The defendant admitted that he had a drinking problem

-3-

and said that he wanted to seek treatment "if that's what's the way to go."

Regarding the incident with Sergeant Gingerich, the defendant testified that he threw a cup of milk on the floor after another correctional officer told him he could not have it. He admitted striking Sergeant Gingerich and said that Sergeant Gingerich struck him after he had been handcuffed.

Regarding the alcohol incident in his jail cell, the defendant said, "[T]he wine incident, you know, that's true. It's water in a bottle, peaches on a tray, put it in there." He admitted that he and Officer Bean had been arguing but denied using foul language. He said that during a previous incarceration, Officer Bean had "choked [him] plumb out unconscious."

On cross-examination, the defendant admitted that he had prior convictions for burglary, evading arrest while driving a motor vehicle, theft under $500, criminal trespass, assault, and DUI.

At the conclusion of the hearing, the trial court revoked the defendant's probation and ordered him to serve his sentence in confinement.

## ANALYSIS

The defendant argues that the trial court erred in revoking his probation, saying that the court abused its discretion "in sustaining the [State's] objection, based upon relevance to the defendant's attempt to introduce evidence of previous misconduct by the [State's] witness, during a probation revocation hearing in which strict rules of evidence are not applicable." The State responds that there was substantial evidence to support revocation of the defendant's probation. We agree with the State.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2010). The revocation of probation lies within the sound discretion of the trial court. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). "The

proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment." Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

A defendant at a probation revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial. See Black v. Romano, 471 U.S. 606, 613 (1985); Gagnon v. Scarpelli, 411 U.S. 778, 786-90 (1973). However, such a defendant is entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s) of probation; (2) disclosure to the probationer of evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members of which need not be judicial officers or lawyers; and (6) a written statement by the fact-finder regarding the evidence relied upon and the reasons for revoking probation. Gagnon, 411 U.S. at 786; Morrissey v. Brewer, 408 U.S. 471, 489 (1972).

During his cross-examination of Sergeant Gingerich, defense counsel attempted to question him about an incident he had with an inmate, Daniel Travino. The State objected, and the following exchange occurred:

> [DEFENSE COUNSEL]: Judge, Mr. Travino was . . . formerly an inmate at the Overton County Jail, involved in an incident with Officer Gingerich. The incident was at one point presented for a Grand Jury inquisition. And so I believe a discussion of that would potentially show the court that the officer might have potentially overstepped his bounds there, maybe he did in this situation. And again, it indicates where we are right now with [the defendant] potentially looking at some sort of leniency the way his violation –
>
> THE COURT: General?
>
> [THE STATE]: It would be one thing if there was a conviction. There's not that. It would be another thing if there was an actual indictment. There's not that. You have the Grand Jury taking no action, so it's basically nothing and the only thing this accomplishes is to explore something which the Grand Jury found to have absolutely no probable cause.
>
> THE COURT: I'll sustain the objection.

In ordering the defendant's sentence into effect, the trial court made the following

findings:

> The [S]tate has proven that the defendant committed a vandalism. He was intoxicated and that he was threatening another person. The [S]tate has proven that the defendant assaulted an officer while he was in jail. The [S]tate has proven that the defendant's intent was to make alcohol while he was jailed. And the [S]tate obviously has proven that he's in violation of his probation.
>
> The [S]tate has also showed that he has a long history with the court and that there has been an assault, that there have been property crimes, that there have been driving offenses.
>
> The defendant testified and contrary to his attorney's characterization, and [defense counsel], you've done the best that you can. It is very difficult to make a silk purse when you[r] proof is not close to being that. I very much appreciate the role that you've taken and how you've looked to find some . . . ray of hope in this. There is none. I want [the defendant] to understand that there just is no way that this court believes, he cannot make it in a free society when he's on probation, he doesn't even make it when he's in the jail. How does the court believe that he's to be probated again?
>
> I am not at all happy to be making this decision, but the decision is so simple to make because the defendant sits in this seat and shows no remorse. He . . . is asked the question about his feelings about hurting the officer. He doesn't answer that question with remorse. He makes excuses is what he does. . . . Every question is answered to give this court the understanding that [the defendant] is not going to rehabilitate, that he is not going to be a good citizen in this community.
>
> Everything that he has done has been done harsher to him he says. And so that attitude will not play in a probation violation hearing when a man is guilty of the probation violation and he has had a hearing and it's shown to the court that what he's done is he's committed an assault on an officer where the officer has had to have reconstructive surgery. We've got a problem.
>
> So he'll serve his sentence.

The defendant admitted that he shattered the windshield of Carol Sutton's van, that he was intoxicated at the time, and that he struck Sergeant Gingerich while incarcerated at the Overton County Jail. We cannot conclude that the trial court abused its discretion in

ordering the defendant's entire sentence placed into effect as such action was within the court's authority. <u>See</u> Tenn. Code Ann. §§ 40-35-310, -311(e).

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's probation and ordering him to serve his original sentence in confinement.

_____
ALAN E. GLENN, JUDGE